In re William David JACKSON, Debtor.

Bankruptcy No. 3–80–01188.

United States Bankruptcy Court,
E. D. Tennessee.

Nov. 22, 1980.

Edwin B. Charles, Johnson City, Tenn., for debtor.

William L. Lancaster, III, Trustee.

Michael J. Hickie, Johnson City, Tenn., for Hamilton Bank of Johnson City.

## MEMORANDUM AND ORDER

CLIVE W. BARE, Bankruptcy Judge.

On September 15, 1980, the debtor filed a voluntary petition in bankruptcy, 11 U.S.C. § 301, scheduling the ownership of a 1980 Camaro valued at $7,000.00, a 1979 Mazda valued at $6,500.00, a 1976 Blazer valued at $3,000.00, and a 1977 Harley–Davidson motorcycle valued at $2,000.00. The value of other scheduled property was minimal, all of which was claimed as exempt. No claim for exemptions was made for the vehicles. William L. Lancaster, III, was appointed Interim Trustee, 11 U.S.C. § 701(a), and at the meeting of creditors held pursuant to § 341, became the trustee in the case, 11 U.S.C. § 702(d).

On October 2, 1980, the trustee filed with the court an application asking that the debtor be directed to forthwith surrender to him possession of the motor vehicles together with the certificates of title thereon. Notice that a hearing on the trustee's application would be held on October 28, 1980, was thereafter given.

On October 6, 1980, the attorney for the debtor submitted a Motion and Order to Dismiss the bankruptcy case, averring that the dismissal was in the debtor's "own best interest."[1] Pursuant to Bankruptcy Rule 120, notice of a hearing on the motion to dismiss was given to all creditors and a hearing scheduled for October 28, 1980, at the same time as the hearing on the trustee's application for surrender of the vehicles. The trustee has filed written objections to the proposed dismissal.

At the hearing it developed that the debtor had surrendered to the trustee a 1975

1. The motion incorrectly referred to the debtor as the "bankrupt." See 11 U.S.C. § 101(12).

Maico 250 motorcycle, not the 1977 Harley–Davidson motorcycle scheduled in the debtor's petition. It further developed that the Harley–Davidson motorcycle had been sold prior to the filing of the bankruptcy petition. The transfer, however, was not listed in the statement of affairs filed by the debtor. See answer "no–none" to Paragraph 12, Statement of Affairs.

The debtor agreed that all vehicles in his possession would be turned over to the trustee forthwith, hence the entry of writ of assistance to the United States was unnecessary. On October 30, 1980, the trustee reported that he had in possession the 1980 Camaro, the 1979 Mazda, and the 1975 Maico 250. The trustee also reported that the 1976 Blazer is at a service station being repaired.

Attorneys representing the Hamilton Bank and the Carter County Bank appeared at the hearing on the debtor's motion to dismiss. Neither objected to the dismissal and the attorney for the Hamilton Bank has since filed a brief asserting that the debtor has an absolute right to dismiss, absent an objection from a creditor, citing the decision of Bankruptcy Judge Shelley in *In re Wirick*, 3 B.R. 539, 6 B.C.D. 354 (Bkrtcy.ED Va.1980).

The trustee asserts (1) that the debtor was uncooperative in making his non–exempt assets available to the trustee, and (2) there are assets available for distribution to unsecured creditors. The latter premise is based upon the failure of the Hamilton Bank to perfect a security interest in the Mazda automobile, prior to the filing of the petition in bankruptcy.

The Bank challenges the trustee's right to object to dismissal, averring that all creditors have either affirmatively or by their failure to object, consented to the dismissal. A review of the cases decided under the prior Bankruptcy Act supports the Bank's position. *In re Salaberry*, 107 F. 95 (D.C.Calif.1901); *In re Lavine*, 20 F.Supp. 362 (D.C.N.Y.1937); *In re Riordan*, 95 F.2d 454 (7th Cir. 1938). These cases hold that, although the trustee is a party in interest and entitled to receive notice of a hearing on the application to dismiss, the trustee is not the proper party to object to the dismissal of the petition, where the bankrupt and all creditors have consented thereto. These cases make it clear, however, that dismissal must be conditioned upon payment of the trustee's compensation, costs and expenses. See also 3 Collier on Bankruptcy, § 59.34[2.2] (14th Ed. 1977).

Section 707 of the 1978 Bankruptcy Reform Act, 11 U.S.C. 707, enacts as follows:

"The court may dismiss a case under this chapter only after notice and a hearing and only for cause including–

(1) unreasonable delay by the debtor that is prejudicial to creditors; and

(2) nonpayment of any fees and charges required by Chapter 123 of Title 28."

*In re Wirick*, 3 B.R. 539, 6 B.C.D. 354 (Bkrtcy.ED Va.1980), Judge Shelley concluded that § 707 of the Reform Act does not change prior case law and does not authorize the trustee to object to dismissal of the case, except for limited purposes, i. e., payment of costs and expenses. Judge Shelley noted that the Reform Act had added the phrase "only for cause" to the court's power to dismiss and quoted with approval a statement found in Snider, Commencement of a Case, Practicing Under the Bankruptcy Reform Act (1979), that the court could undoubtedly find cause for denial of an application to dismiss, to the extent that the voluntary dismissal would prejudice creditors.

The reason for the Bank's support of the debtor's application to dismiss the present case is abundantly clear. As soon as the case is dismissed, the Bank will perfect its security interest in the 1979 Mazda, if it has not already done so. Be that as it may, however, all creditors were notified that a hearing would be held on the debtor's application to dismiss, a hearing was held, and no creditor filed or voiced an objection. Thus, in effect, creditors have joined with the debtor in seeking dismissal of the case, as they have every right to do. Unless there is an objection from a creditor, the court will not, on its own, deny dismissal.

As correctly noted by Judge Shelley in *Wirick*, one of the purposes for the enactment of the Reform Act was to remove the bankruptcy judge from case administration. Thus, absent a controversy, fraud, misrepresentation, or a clear violation of the provisions of the Code, the legitimate and unanimous wishes of the debtor and his creditors should prevail.[2] Prior to dismissal, however, the debtor must deposit with the trustee an amount sufficient to pay all fees, costs and expenses. Upon certification by the trustee that the deposit has been made, the attorney for the debtor will submit an order of dismissal.

IT IS SO ORDERED.

**2.** "Lack of cooperation" on the part of the debtor apparently did not extend to the concealment of assets. If it appeared that he had done so, other provisions of the United States Code would be applicable. See 11 U.S.C. § 727; 18 U.S.C. § 152.

The trustee's duties under the Bankruptcy Reform Act are clear. Along with other specified duties, the trustee is required to collect and reduce to money the property of the estate; investigate the financial affairs of the debtor; and, if advisable, oppose the discharge of the debtor. 11 U.S.C. § 704. The debtor's duties are also specifically defined–to appear and submit to examination under oath at the meeting of creditors, 11 U.S.C. § 343; to file a list of creditors and a statement of affairs, to surrender to the trustee all property of the estate and all recorded information, to cooperate with the trustee as necessary to enable the trustee to perform his duties, 11 U.S.C. § 521; and to appear at the discharge hearing, 11 U.S.C. § 524(d).

The power and jurisdiction of the court to require compliance with the provisions of the Code are specifically authorized; "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." 11 U.S.C. § 105(a).