In re RIVERSIDE–LINDEN INVEST-MENT CO., a general partnership, Debtor.

Bankruptcy No. 83–00948–H7.

United States Bankruptcy Court, S.D. California.

April 6, 1988.

**108**

Joel C. Estes, Kevin J. Hoyt, Robert A. Hessling, San Diego, Cal., for Trustee Ralph Boldt.

John Forest Hilbert, Anderson, Goldberg & Waldron, San Diego, Cal., for Kathryn Crake.

Jerome E. Eggers, Sternberg, Eggers, Kidder & Fox, P.C., San Diego, Cal., for Earl Hafer.

JOHN J. HARGROVE, Bankruptcy Judge.

At issue are the propriety and reasonableness of the fees charged by the attorneys and accountants for the trustee relating to the administration of the Chapter 7 debtor's estate. Kathryn Crake, fifty percent general partner in the debtor, objects to these fees, alleging that (1) the trustee's investigation of the unsecured claim of Earl V. Hafer ("the Hafer claim") was unnecessary, excessive, and did not lead to the filing of a claim objection; (2) the trustee's investigation into and motion to subordinate or disallow her partnership interest and the trustee's opposition to her motion for distribution of the estate, or in the alternative dismissal of the case were unnecessary, retaliatory and beyond the scope of the trustee's duties; and (3) the trustee's investigation into the debtor's formation and early financial history for the purpose of preparing partnership tax returns was unnecessary, excessive and beyond the scope of the trustee's duties.

The trustee responds that all actions taken by the attorneys and accountants on his behalf were in accordance with the duties of a Chapter 7 trustee pursuant to 11 U.S.C. § 704 and 26 U.S.C. § 6031, and the concomitant duties of diligence required of professional persons in the performance of their duties.

This court has jurisdiction to hear these matter pursuant to 28 U.S.C. § 1334 and § 157 and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

### FACTS

Kathryn Crake ("Crake"), and six other persons are general partners in the debtor general partnership. The debtor's primary asset was an 8.4 acre parcel located in Riverside, California ("the Riverside property").

The debtor filed for relief under Chapter 11 of the Bankruptcy Code on March 2, 1983. On November 7, 1984, this case was converted to a Chapter 7 proceeding and Ralph Boldt appointed as Chapter 7 trustee. A court approved sale of the Riverside property resulted in the trustee receiving net proceeds of $398,453.41 in September 1985.

On November 8, 1985, Hafer, an unsecured creditor, moved this court to compel distribution of his claim of $65,879.98. None of the creditors objected, with the largest then creditor, James W. Kugler, consenting to such distribution. However, the trustee filed opposition claiming that the distribution was premature, since there was still the possibility of late filed[1] or amended claims being filed, and that the "claims"[2] of the general partners had not been subordinated to those of the non-insider creditors. The trustee made no objection *per se* to the allowability of the Hafer claim in his opposition to distribution.

Thereafter, over a period of approximately five months, Hafer, the trustee, and ultimately Crake, negotiated an arrangement whereby funds sufficient to satisfy the Hafer claim were placed in a mutual fund. Income from this mutual fund was to be paid directly to Hafer, with the trustee reserving his right to object to the Hafer claim at a later time. On December 10, 1985, the court granted the trustee's application to expand the role of Estes & Hoyt ("E & H") as counsel for the trustee, to include services in connection with the review of claims and objections thereto and the administration of miscellaneous matters in the distribution and closing of the estate. During the period the Hafer arrangement was being negotiated and immediately thereafter, the trustee undertook various claim objections, which ultimately left Hafer's claim as the sole remaining creditor claim. Furthermore, subsequent to May 19, 1986, the debtor was solvent, with cash assets in the possession of the trustee substantially exceeding the sum of the Hafer claim and all administrative expenses.

On June 5, 1986, the court granted the trustee's motion for authority to hire the accounting firm of Steres, Alpert & Carne ("S A & C") in fulfilling his duties as trustee.

On January 16, 1987, the court granted the trustee's *ex parte* application for production of documents in the possession of the partners and creditors, pursuant to Bankr.R. 2004, in order to prepare the partnership tax returns and investigate the financial history of the partnership. On January 20, 1987, the court granted the trustee's application requesting the turnover of all documents in the possession of Master Escrow Services, Inc., in connection with its investigation of the Hafer claim. On April 16, 1987, the trustee subpoenaed Crake and her non-bankruptcy counsel, Caldwell & Toms, for deposition and production of documents on May 18–19, 1987 (apparently for the purpose of investigating the formation of the debtor, Crake's partnership interest and the Hafer claim, although the notice provided no specific purpose). None of these pleadings revealed that the estate was solvent. During this time period, counsel for Crake made several requests to E & H's associate Michael O'Halloran ("O'Halloran") and SA & C's accountant Michael D. Conroy ("Conroy") that certain minor debts be treated in a manner most favorable to the IRS, in order to save the expense of investigation and to expedite the closing of the estate. There is no evidence that this alternative was considered by the trustee.

On October 14, 1987, Crake filed a motion to compel distribution of the assets of the estate or in the alternative for dismissal of the proceeding. This motion was joined by Hafer, still the only remaining creditor of the estate. The motion to distribute or dismiss was opposed by the trustee, who concurrently filed a countermotion entitled "Motion For Partial Disal-

---

1. The claims bar date was September 17, 1985.

2. While the trustee refers to the ownership interests of the general partners as claims, the court concludes herein that the interests of general partners are not "claims."

lowance Of Crake's Unsecured Claim [based on her ownership of a fifty percent interest in the partnership] Or In The Alternative Equitable Subordination." This motion was based on "(1) the debtor [having] assumed an obligation evidenced by a note in the sum of $64,512.36 payable by Equity Investments, an alter ego of Crake ... and ... Hafer ... and (2) [the breach of her fiduciary duty to the other general partners in connection with such assumption]." The motion went on to allege "inequitable conduct [which] ... injured the *creditors* of the debtor," despite the fact that over two years had passed since the September 17, 1985 claims bar date and the only unpaid creditor remaining, Hafer (who would be paid in full by such distribution), joined Crake's motion to distribute. The trustee's motion was withdrawn subsequent to this court's December 7, 1987 decision to grant the motion for distribution and immediately release the funds reserved to pay the Hafer claim.

Thereafter, on January 25, 1988, this court heard the applications for compensation made by E & H and S A & C. Crake filed her objection to the respective fee applications. At the hearing, this court took the applications and objections thereto under submission and requested additional briefing.

## DISCUSSION

### A. *The Hafer Claim.*

Crake objects *inter alia* to the fees incurred by E & H in connection with the trustee's investigation of the Hafer claim.[3] Crake points out that although E & H spent 56.7 hours over a period of eighteen months investigating the Hafer claim, no objection was filed. During this time, there were no other creditors of the estate besides Hafer and the estate had sufficient

---

**3.** This objection only involves fees incurred after April 29, 1986, at which time Hafer was the sole remaining creditor.

**4.** Crake also suggests some of this time may be attributable to the trustee's "erroneous belief" that the trustee had to investigate the debtor's entire tax history. The extent to which a tax investigation was necessary is discussed below.

money to pay Hafer's claim and all the administrative expenses as well as a surplus for distribution to the general partners. In addition, none of the general partners opposed Hafer's request to distribute nor did they challenge the validity of his claim. Crake asserts that the investigation undertaken by E & H on behalf of the trustee was unnecessary. Furthermore, Crake attributes a portion of these billings to the education of E & H associate Robert Hessling ("Hessling"), the second E & H attorney responsible for this matter, and asserts that had the trustee diligently processed this estate, a second attorney would not have been necessary.[4] Finally, Crake asserts that the extensive investigation of the formation of the debtor was beyond the scope of the trustee's duties.

The trustee responds that despite the fact that the estate had a surplus and despite the fact that none of the general partners objected to the Hafer claim, he had a duty to investigate the affairs of the debtor, including those transactions giving rise to the Hafer claim, and that the services of E & H in connection therewith were reasonable, necessary and authorized by the Code.

A Chapter 7 trustee's duties are set forth by 11 U.S.C. § 704. Among those duties are:

(1) The duty to collect and reduce to money all property of the estate for which such trustee serves, and close such estate as quickly and expeditiously as is compatible with the best interests of the parties in interest;

.      .      .      .      .

(4) Investigate the financial affairs of the debtor;

(5) *If a purpose would be served,*[5] examine proofs of claims and object to the

---

**5.** While the phrase "if a purpose would be served" is clearly subjective, this court notes that very little purpose would be served in objecting to a claim when there are no other creditors and all the general partners consent to its payment. This court further points out that under § 704(5) the proper procedure for examining proofs of claim is for the trustee to request that the debtor examine the proofs of

allowance of any claim that is improper.... (emphasis added).

■ Within these duties lies at least a latent conflict. While the trustee is obligated to expeditiously close the estate in the best interests of the parties in interest, such a closing will often be delayed while the trustee objects to the claims of certain parties in interest. Clearly, "a purpose would be served" when there are other creditors who stand to benefit from the trustee's actions and such actions show a likelihood of increasing the total distribution to the creditors. However, there comes a point where such an investigation is either too costly to justify or beyond the scope of the trustee's duties. When a cost benefit analysis indicates that the only parties who will likely benefit from an investigation of a claim are the trustee and his professionals, investigation is unwarranted. A trustee, while having the right to investigate claims without court authority, must exercise this right judiciously.[6] The trustee cannot engage in fishing expeditions when no purpose would be served.

■ It is well recognized that the trustee's duties under § 704 are not co-equal. The duty to close the estate as quickly and expeditiously as is compatible with the best interests of the parties in interest has been called the trustee's "main duty." The other provisions of § 704 "are merely directory as to what the trustee shall do in accomplishing the main objective and purpose of the appointment...." 4 *Collier on Bankruptcy* para. 704.01[3] (15th ed. 1987).

Initially, in the case at bar, the trustee clearly had a duty to the debtor to investigate the Hafer claim. However, to the extent that this investigation lasted over eighteen months and cost the estate in excess of $5,500 in attorneys' fees since the last fee application alone, the trustee's judgment in pursuing such investigation must be questioned. Certainly, the amounts required to educate new attorney Hessling regarding the background of this claim cannot be allowed in view of the substantial delay in prosecution.

■ The trustee alleges that the investigation was necessary, in part, to inquire into the conduct of Hafer, the general partners of the debtor and third parties, in order to reveal possible causes of action which might have inured to the estate. However, to the extent such actions may have existed, the appropriate action for the trustee would have been to seek dismissal of the bankruptcy proceeding, since the debtor was solvent and at least some of the beneficiaries of suits brought by the trustee on behalf of the estate would likely have been the defendants in such actions. By dismissing the action, the trustee would have extricated himself from the windup and dissolution proceedings, leaving the real parties in interest to decide the appropriate course of action for pursuing their individual rights. By remaining in an active posture, the trustee served only to multiply the proceedings and parties and incur additional administrative expenses. Therefore, this court disallows all fees attributable to Hessling's work relating to the Hafer claim and all fees incurred by E & H in connection with the investigation of the Hafer claim subsequent to Hessling's first work relating to Hafer's claim. This court further disallows as unnecessary all fees incurred in connection with the 2004 examinations and depositions of Crake, Master Escrow Services, Inc., and Caldwell & Toms.

B. *Crake's Motion to Compel Distribution or Dismiss.*

■ Crake objects to the fees incurred by E & H in connection with the trustee's opposition to Crake's motion to compel dis-

---

claims and report to the trustee as to the propriety thereof. If the debtor fails to do so, the trustee should request the court order him to do so. 4 *Collier on Bankruptcy* para. 704.08 (15th ed. 1987).

**6.** This limitation is also required by implication from provisions found in the Code and in the Bankruptcy Rules, especially Bankr.R. 1001 which reads as follows:

These Rules shall be construed to secure the expeditious and economical administration of every case under the Code and the just, speedy and inexpensive determination of every proceeding therein.

tribution or dismiss, and the subsequent motion for partial disallowance or subordination of Crake's "unsecured claim," [7] as being unnecessary, retaliatory [8] and beyond the scope of these proceedings. The trustee responds that he had the duty to investigate and the duty to object to all improper claims, and that his actions were encouraged by representatives of two of the general partners, at whose request he was acting, in part.

This objection to E & H's fees necessarily raises three subissues, (1) whether a general partner's interest in the partnership is a "claim" to which the trustee has a duty to object pursuant to § 704(5); (2) whether the trustee has standing to object to a motion for dismissal which has the support of the sole creditor of the estate; and (3) whether the trustee may act on behalf of general partners of the debtor.

On the first subissue, this court concludes that a general partner's interest is not within the definition of "claim" set forth by § 101(4) of the Code. The trustee asserts that the definition of "claim" provided by § 101(4) is broad enough to include the interest of a general partner in a general partnership, because such interest "represents a contingent right to payment based upon [an] ownership ("equitable") interest in the debtor." Section 101(4)(A) of the Code defines "claim" as "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, *equitable*, secured, or unsecured; ..." (emphasis added).

Where a statute is plain on its face, the court need look no further for interpretation. *U.S. v. Wicks*, 833 F.2d 192 (9th Cir.1987). However, where a statute's meaning is not plain, the court may look to the legislative history for guidance. *In re Ron Pair Enterprises, Inc.*, 828 F.2d 367 (6th Cir.1987).

> [T]he normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. *The Court has followed this rule with particular care in construing the scope of bankruptcy codifications.*

*Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 759–60, 88 L.Ed.2d 859 (1986); *In re Ron Pair Enterprises, Inc.*, 828 F.2d at 370 (emphasis added) (citation omitted).

The scope of "equitable" is not clear from a plain reading of the statute. Therefore, this court turns to the legislative history for guidance. In discussing the effect of the Code on partners and partnerships, the Report of the Judiciary unequivocally states "[p]artners in the [debtor] partnership are not claim holders by virtue of their partnership interest...." H.R.Rep. No. 595, 95th Cong. 1st Sess. 197 (1977), U.S. Code Cong. Admin.News 1978, pp. 5787, 6158, *reprinted in* App. 2 *Collier on Bankruptcy*, Part II, p. 197 (15th ed. 1987). While the trustee is correct that the Ninth Circuit in *Kaufman–Brown Potato Co. v. Long*, 182 F.2d 594 (9th Cir.1950) refers to the general partners' interests in a general partnership as "claims," this choice of wording is not as a result of any legal analysis on the part of the court. The trustee's reliance on *Kaufman–Brown* is misplaced. While the *Kaufman–Brown* court may or may not have been correct in its usage of the word claim based on the applicable law under the Bankruptcy Act of

---

**7.** The trustee erroneously refers to Crake's general partnership interest as an unsecured claim. While Crake did in fact file a proof of claim, this proof set forth Crake's right to share in the distribution of the debtor as a fifty percent general partner. As discussed herein, a general partner's right to share in a distribution of the surplus funds of a solvent debtor is not a claim.

**8.** While the court reaches no conclusions as to whether the trustee was acting in a retaliatory manner, the court did observe that the timing of some of the trustee's actions and overall behavior in connection with this estate were not beyond reproach. This court is especially wary of what it perceives to be fishing expeditions on the part of the trustee into the transactions which led to the formation of the debtor, especially those which formed the basis for Crake's fifty percent general partnership interest.

1898, the legislative history of the Bankruptcy Reform Act of 1978 is clearly contrary to the trustee's assertion. Therefore, this court holds that Crake's general partnership interest is not a claim.

■ Turning to the second subissue, this court concludes that the trustee did not have standing to object to Crake's motion to dismiss. In *In re Hall,* 15 B.R. 913, 915 (9th Cir. BAP 1981), the Bankruptcy Appellate Panel considered the question of whether a trustee had standing to object to the *debtor's* motion to dismiss. The Panel observed that prior cases on this issue had held that absent creditor objections, the trustee did not have standing to object to debtor's motion to dismiss, except to insure payment of the trustee's fees, costs and expenses. 15 B.R. at 915, discussing *In re Wirick,* 3 B.R. 539 (Bankr.E.D.Va.1980) and *In re Jackson,* 7 B.R. 616 (Bankr.E.D. Tenn.1980). The Panel, however, found that one of the fundamental purposes of the Bankruptcy Reform Act of 1978 was to remedy the "breakdown in creditor control." As a result, it became the trustee's duty to act on behalf of the silent general unsecured creditors. *Hall,* 15 B.R. at 916. The Panel held that "[u]nless the creditor affirmatively consents to the dismissal the trustee will have standing to object on that creditor's behalf." 15 B.R. at 916. The Panel further stated that "[w]here all creditors affirmatively consent to the debtor's motion to dismiss it clearly follows that the trustee only has standing to object on the grounds that his fees, costs or expenses must be paid before the case may be dismissed." 15 B.R. at 915. In the case at bar, while the subject motion to dismiss was brought by Crake and not the debtor, this court can find no reason why the rationale and holding in *Hall* is not equally applicable to Crake's motion. Therefore, since the sole remaining creditor, Hafer, affirmatively consented to dismissal, the trustee had no standing to object except to insure payment of his fees, costs and expenses.

■ Turning to the third subissue, this court concludes that the trustee is not authorized to act on behalf of general partners.[9] The trustee's duties are owed only to the estate and its creditors. Section 101(9) sets forth the definition of "creditor." All three subparts of § 101(9) define creditor as entities which have "claims." This court has already concluded that general partnership interests are not "claims," within the definition of § 101(4). Since general partnership interests are not claims, it follows that general partners cannot be creditors based solely on their general partnership interests.

■ While § 704(1) gives the trustee the duty to close the estate as quickly and expeditiously as is compatible with the best interests of the parties in interest, in a Chapter 7 case, the trustee is not charged with representation of general partners. To the extent that the trustee acted at the request of some of the general partners and not solely in the interests of creditors and the estate, he must be considered a volunteer, and the services rendered to this extent non-compensable.

In his supplemental pleadings, the trustee asserts in defense of his motion for partial disallowance or subordination of Crake's partnership interest that this court has jurisdiction over the debtor's estate and its distribution and should consider the relative liabilities and rights to profits of each of the general partners in determining the equitable distribution of the assets pursuant to 11 U.S.C. § 723. Therefore, the trustee asserts that he has a duty to adjust the relative rights of partners in anticipation of such distribution.

■ The trustee's reliance on § 723 is misplaced. Section 723 is the scheme by which the Code allows the trustee to recover any deficiencies in the assets of a debtor general partnership from the general partners themselves.[10] Section 723 has abso-

---

9. While counsel for the trustee asserted at the January 25, 1988 hearing that the representatives of two of the general partners supported these investigations, there is no evidence to sup-

port this assertion, besides counsel's offer of proof.

10. While § 5 of the Bankruptcy Act of 1898, the predecessor of § 723, provided for a complete

lutely no applicability to cases like the instant one where the partnership is solvent, because there is no deficiency.[11]

Therefore, this court holds that all fees incurred in connection with the trustee's opposition to Crake's motion to compel distribution or for dismissal and all fees incurred in moving for disallowance or equitable subordination of her partnership interest are disallowed.

## C. Trustee's Duty to Prepare Partnership Tax Return.

Crake also objects to E & H's and SA & C's fee applications to the extent they encompass investigations into the history and formation of the partnership, for the purpose of preparing tax returns and gathering information for periods prior to the debtor's filing bankruptcy. The trustee responds that an in-depth analysis of the debtor's transactions prior to its filing bankruptcy was necessary to reconstruct the debtor's books and reconcile discrepancies for the purpose of filing informational tax returns and supplying the IRS with information necessary to prepare debtor's pre-petition tax returns. The trustee further asserts that his accountants had a duty of due diligence to investigate the debtor's transactions and affairs in connection with the preparation of the debtor's tax returns.

■ Chapter 7 trustees are required to file informational tax returns for debtor partnerships for the period during which they are appointed. 11 U.S.C. §§ 346(a), (c)(2) and 728(b); 26 U.S.C. § 6031. *See, C.R. McQueen and J. Crestol,* Federal Tax Aspects of Bankruptcy, § 7.08 (1985).

■ For the proposition that the trustee is also required to gather and submit information to the IRS to facilitate the filing of partnership returns which were due for taxable periods ending prior to his appointment, the trustee cites IRS Letter Ruling 8509038, November 30, 1984. The IRS therein stated:

Neither the Internal Revenue Code nor the Bankruptcy Code affirmatively imposes a duty on the trustee of a partnership which is subject to bankruptcy proceedings under Title 11 of the U.S. Code to file delinquent partnership returns which were due for a taxable period which ended prior to the time when the trustee was appointed. However, the trustee should, in compliance with § 1106(a)(6) of Title 11 of the U.S. Code notify the Internal Revenue Service of the home and business addresses and telephone numbers of the partners of X, Y, and Z, and furnish to the service any and all information from the books and records that may be in the trustee's possession and that would facilitate the accurate filing of the [pre-petition] partnership returns.

This court finds the IRS Letter Ruling unauthorative and inapplicable to the case at bar. First,

[letter] rulings lack the force of law. *In re Weisser,* 1 B.R. 206 (Bankr.M.D.Fla. 1979). Instead, [letter] rulings reflect the partisan stance of the Commissioner of the Internal Revenue. *Helvering v. New York Trust Co., Trustee,* 292 U.S. 455, 467–68, 54 S.Ct. 806, 809–10, 78 L.Ed. 1361 (1934).... *In re Samoset Associates,* 14 B.R. 408, 410 n. 2 (Bankr. D.Me.1981).

distribution scheme which included a mandate that such distribution be done in accordance with applicable state law, no such windup power is provided by the Code. The adjustment of shares in the distribution of a debtor partnership's estate to its general partners is properly left to a state court in a windup and dissolution proceeding.

11. The manner in which an estate is distributed is governed by 11 U.S.C. § 726. This court notes that the distributional scheme set forth in § 726(a) describes the first five levels of pay-

ment as payments on claims. The final distribution under § 726(a)(6) is made "to the debtor." Furthermore, § 726(b) states that payments on claims shall be made on a *pro rata* basis among claims of each of the classes. However, this *pro rata* distribution mandate does not apply to § 726(a)(6). Therefore, it seems clear that to the extent a surplus exists after payment of claims, the funds revest in the debtor. The Code goes no further respecting the rights of parties who are owners of the debtor.

Second, 26 U.S.C. § 6110(j)(3) provides that letter rulings may not be used or cited as precedent. Most significantly, the letter ruling in question discusses the express provisions of 11 U.S.C. § 1106(a)(6) regarding a *Chapter 11 trustee's* duty to supply information necessary to prepare tax returns for pre-petition years. There is no similar duty set forth by the Code which applies to a Chapter 7 trustee. In light of this silence, it would appear that Congress intended to impose a greater tax reporting duty on Chapter 11 trustees. Therefore, to the extent that E & H's and SA & C's fees were incurred in connection with investigations for purposes other than the preparation of informational tax returns for the years 1984 through 1987, such fees are not compensable.

▮ Crake submits and this court concurs that an appropriate alternative to extensive investigation of the unresolved discrepancies regarding minor debts of the partnership which impeded the preparation of informational tax returns for the years the Chapter 7 trustee was required to file would have been to treat such entries in a manner most favorable to the IRS. While the trustee argues that such an approach would violate the accountant's duty of due diligence and duty to investigate all entries which appear suspicious, in light of the trustee's inability to resolve these matters within the first two years of his appointment, this court endorses the position of Crake as an appropriate cost saving measure.

To the extent that the duty of due diligence and duty to investigate all entries which appear suspicious may be in conflict, this court merely notes that the main duty of the trustee is to expeditiously close the estate compatibly with the best interest of the parties in interest. This main duty is always well served by judiciously preserving the assets of the estate. Therefore, all fees incurred in connection with the investigation into the debtor's formation and pre-formation history are disallowed. Furthermore, all fees incurred in connection with the investigations of the minor debts which impeded the filing of informational tax returns conducted by the E & H and SA & C

firms subsequent to March 2, 1987, the last date on which Crake's suggested such treatment, are disallowed. The court also finds that there was a substantial amount of miscommunication between the trustee's attorneys and the trustee's accountants regarding their investigation of the partnership and estate history. For example, the accountants had not been advised that a claims bar date had expired eight and a half months prior to their appointment.

### D. *Miscellaneous.*

In reviewing the line item entries of SA & C, this court finds that the entries lack sufficient detail. Furthermore, much of the work shown in other line item entries would appear to apply to both compensable and non-compensable work. Therefore, rather than trying to "unscramble the egg," because it is not possible to disallow fees on a line item basis, this court elects to disallow a percentage of those tasks which the court believes to contain an inherent overlap between allowable and unallowable services undertaken by SA & C. Furthermore, in this court's review of the time entries of E & H, a December 7, 1987 entry involving "attorney Pickett" and the "Nova Agreement" for two tenths of an hour was noted. This court believes that this was an inadvertency on the part of E & H, and disallows it unless it can be reconciled with the proper purposes discussed herein.

### CONCLUSION

The fee application of E & H shall be reduced as follows:

(1) All fees incurred by Hessling in connection with the Hafer claim are disallowed.

(2) All fees incurred in connection with the Hafer claim subsequent to Hessling's first line item entry thereon are disallowed.

(3) All fees incurred in connection with the investigation of the formation and history of the partnership are disallowed.

(4) All fees incurred in connection with its investigation of Crake's partnership interest are disallowed.

(5) All fees incurred in connection with its opposition to Crake's motion for distribution or dismissal are disallowed.

(6) All fees incurred in connection with the trustee's motion for partial disallowance or subordination of the Crake partnership interest are disallowed.

(7) All fees and costs incurred in connection with the deposition of Crake and Caldwell & Toms are disallowed.

(8) All fees and costs incurred in connection with the 2004 examinations of Master Escrow Services, Inc. are disallowed.

(9) All fees incurred subsequent to March 2, 1987, regarding investigations of the minor debts for which Crake proposed treatment most favorable to the IRS are disallowed.

(10) E & H is instructed not to charge the estate for time spent in connection with the supplemental pleadings filed on February 5, 1988.

(11) The December 7, 1987 entry regarding the Nova Agreement is disallowed.

The fees of SA & C are treated as follows: The following entries are disallowed:

(1) Item 13, page 10 for $220.00 (relates to years for which no return was required).

(2) Item 27, page 4 for $52.00 (overhead).

The following entries of SA & C are reduced by fifty percent because this court concludes that there was a substantial overlap potential between allowable and nonallowable work and because this court believes that the detail given to explain these entries is insufficient.

(1) Page 1, Items 35–40.

(2) Page 2, Item 34.

(3) Page 3, Item 33.

(4) Page 4, Items 15–26 and 28–32.

(5) Page 5, Items 5–14.

(6) Page 8, Items 42–45.

(7) Page 9, Items 24–25.

(8) Page 10, Item 16.

(Page and Item references relate to Fee Application Exhibit of SA & C).

The following entries are reduced by fifty percent because they are at least partially related to non-compensable work and because this court believes a fair separation is not possible.

(1) Page 6, Items 51–54.

(2) Page 7, Items 47–50.

(3) Page 8, Items 32–37.

(4) Page 9, Items 17–22 and Item 26.

(5) Page 10, Items 6–11 and 14.

This court intends that the SA & C fees disallowed reflect the fact that the only allowable fees incurred by SA & C are those which relate to the preparation of the informational tax returns of the debtor for the years 1984 through 1987. In addition, this court intended to delete all SA & C's fees incurred subsequent to March 2, 1987, regarding investigations of the minor debtors for which Crake proposed treatment most favorable to the IRS.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankr.R. 7052. Counsel for Crake is directed to file with this court an Order in conformance with this Memorandum Decision within fifteen (15) days from the date of entry hereof. The order shall state with specificity the deductions from the trustee's, attorneys' and accountants' fee applications and include after deduction, the balance due on both applications.