In re RIVERSIDE–LINDEN INVEST-
MENT COMPANY, Debtor.

ESTES & HOYT, Appellants,

v.

Kathryn CRAKE and Earl
Hafer, Appellees.

BAP No. SC–88–1526–RPAs.
Bankruptcy No. 83–0948–M7.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Feb. 15, 1989.

Decided May 17, 1989.

Robert A. Hessling, Estes & Hoyt, San Diego, Cal., for appellants.

John Forest Hilbert, Andersen, Goldberg & Waldron, San Diego, Cal., for appellees.

## OPINION

Before RUSSELL, PERRIS and ASHLAND, Bankruptcy Judges.

RUSSELL, Bankruptcy Judge:

The attorneys for the Chapter 7 trustee appeal the bankruptcy court's finding that the trustee exceeded his duties by investigating an unopposed claim when the estate was solvent, failing to distribute assets of the solvent estate, and hiring accountants to investigate the history and formation of the debtor. The court therefore held that the attorneys for the trustee were not entitled to compensation for fees and costs incurred in such endeavors and reduced and disallowed the fees accordingly. We AFFIRM.

## FACTS

Riverside–Linden Investment Company ("Riverside–Linden") (debtor) was a general partnership formed by the following general partners: Kathryn Crake ("Crake") (appellee), Thomas and Donna Fowler ("Fowlers"), D.W. and Toni Mitchell ("Mitchells"), and Edmund and Kathryn Curriden ("Curridens"). The debtor partnership was formed in November 1981 for the purpose of acquiring an 8.4 acre parcel

of land located in Riverside, California ("Riverside Property") from Pacific Property Fund, a partnership of Crake and Earl W. Hafer ("Hafer") (appellee). The primary asset of the debtor's estate was the Riverside Property, which was acquired on November 23, 1981.

On March 2, 1983, the debtor filed its Chapter 11 petition to prevent foreclosure on the Riverside Property. On November 7, 1984, the case was converted to Chapter 7 and on December 11, 1984, Ralph Boldt was appointed as the Chapter 7 trustee. Thereafter, the bankruptcy court authorized Boldt to hire Estes & Hoyt ("E & H") (appellants) as counsel to assist in the sale of the Riverside Property. On December 10, 1985, the court expanded the scope of E & H's authorized services to include assisting the trustee in the liquidation and winding up of the estate, including reviewing, analyzing and prosecuting objections to claims.

On August 22, 1985, the court approved the sale of the Riverside Property, from which the trustee received net proceeds of $398,453.41 in September 1985. On November 8, 1985, unsecured creditor Hafer filed a motion to compel distribution on his claim of $65,879.98, which was the former obligation of Crake assumed by the debtor when it acquired the Riverside Property. None of the creditors objected to such distribution. However, the trustee filed opposition claiming that the distribution was premature since there existed the possibility of late filed [1] or amended claims and that the "claims" [2] of general partners had not been subordinated to those of the non-insider creditors. In his opposition to distribution, however, the trustee did not object to the allowability of the Hafer claim.

Over a period of approximately five months, Hafer, the trustee and Crake negotiated a court-approved stipulation and compromise arrangement whereby funds sufficient to satisfy the Hafer claim were placed into an interest-bearing trust account. The principal would only be released upon a final determination of the validity of Hafer's claim. Interest from this account was to be paid directly to Hafer, with the trustee reserving his right to object to the Hafer claim at a later date. During the five-month negotiation period, as well as immediately thereafter, the trustee undertook and resolved various claims, including ones involving Crake. Thus, the Hafer claim remained as the sole unresolved claim.

On May 19, 1986, it became apparent that the debtor's estate was solvent as a result of disallowance of certain substantial claims. The trustee possessed cash assets which substantially exceeded the sum of the Hafer claim and all administrative expenses. On June 5, 1986, the bankruptcy court authorized the trustee to hire the accounting firm of Steres, Alpert & Carne ("S A & C") to prepare and file informational tax returns of the debtor and to aid the trustee in fulfilling his duties.

Since its formation, the debtor had never filed any tax returns. On January 16, 1987, the court granted the trustee's *ex parte* application for production of documents in possession of the partners and creditors, pursuant to Bankruptcy Rule 2004, in order to prepare the partnership's tax returns and investigate the financial history of the partnership. On January 20, 1987, the court granted the trustee's application requesting turnover of all documents in the possession of Master Escrow Services, Inc., in connection with its investigation of the Hafer claim. On April 16, 1987, the trustee subpoenaed Crake and her non-bankruptcy attorney for depositions and production of documents on May 18–19, 1987, apparently to obtain information relating to Crake's partnership interest, the Hafer claim, and the formation of the debtor. None of the trustee's pleadings, however, indicated that the estate was already solvent.

During this same time period, in order to save investigation expenses and to expedite the filing of tax returns prerequisite to closing the estate, counsel for Crake sug-

---

1. The claims bar date was September 17, 1985.

2. As will be discussed *infra,* the interests of the general partners are not "claims."

gested to E & H and S A & C, on several occasions, that the trustee treat certain minor debts in a manner most favorable to the IRS. There is no evidence that the trustee considered or acted upon this suggestion.

On October 14, 1987, Crake filed a motion to compel distribution of the assets of the debtor's estate, or, in the alternative, to dismiss the case. The trustee opposed the motion and concurrently filed a counter-motion for a partial disallowance of Crake's unsecured claim (based on her ownership interest of a fifty percent interest in the debtor partnership) or, in the alternative, for equitable subordination of her claim. The trustee's motion was based upon Crake's alleged breach of fiduciary duties in causing the debtor to assume a note for $64,512.36, payable to Equity Investments, on which Crake was personally liable. This motion further alleged "inequitable misconduct [which] ... injured the *creditors* of the debtor," (emphasis added) despite the fact that more than two years had elapsed since the September 17, 1985 claims bar date and that the only unpaid creditor, Hafer (who would be fully paid by distribution of the funds), joined Crake's motion to dismiss.

On December 7, 1987, the bankruptcy court granted Crake's motion for distribution and immediate release of the funds held in the trust account reserved to pay the Hafer claim. Thereafter, on December 30, 1987, pursuant to the court's order, E & H filed notice of a hearing on its fee application as special counsel for the trustee, seeking final fees of $50,217.00 and $2,180.65 for expenses. The fee application, in particular, requested reimbursement for fees incurred in investigating the Hafer claim, the Crake partnership interest, and the history and formation of the debtor. This fee application also requested reimbursement for costs and expenses incurred by S A & C.

Crake objected to this fee application on the grounds that some of the fees incurred by E & H were unreasonable. Crake argued that the trustee's investigation into the Crake and Hafer claims was unneces-

sary and beyond the scope of the trustee's duties and that the trustee's investigation into the history and formation of the debtor for the purposes of preparing informational tax returns was unnecessary. Crake also objected on the ground that the trustee's counter-motion for partial disallowance or subordination of Crake's claim was unnecessary, retaliatory and beyond the scope of the debtor's case.

The bankruptcy court heard the fee application request for compensation made by E & H on January 25, 1988. On April 6, 1988, the court filed its Memorandum Decision (*see In re Riverside–Linden Investment Co.*, 85 B.R. 107 (Bankr.S.D.Cal. 1988)) in which it sustained some of Crake's objections and disallowed $11,844.00 in fees and $288.00 in costs of E & H relating to the following: the investigations into the Hafer and Crake claims and the formation and history of the debtor; the trustee's opposition to Crake's motion for distribution or dismissal and motion for partial disallowance or subordination of Crake's claim; the discovery consisting of the deposition of Crake and her attorneys and the Rule 2004 examination of Master Escrow Services, Inc.; the investigation of debts owed to the partnership; and the filing of supplemental pleadings relating to the final fee application. The court further disallowed all fees incurred by S A & C except those which related to the preparation of the debtor's informational tax returns for the years 1984 through 1987.

The bankruptcy court's order, entered June 6, 1988, stated:

that the fee application of Estes & Hoyt ... for previously unpaid fees is disallowed in the amount of $11,844.00, in fees and $288.20 in costs, and allowed in the amount of $27,168.50 in fees ($38.750.00 − $11,581.50 = $27,168.50) and $1,892.45 in costs $12,180.65 − $285.20 = $1,882.45) for a total allowance of $29,060.95 which shall be paid by the trustee forthwith from funds of the estate.

IT IS FURTHER ORDERED that the $23,048.50 previously awarded and paid as interim compensation is hereby ap-

proved and allowed as final compensation.

E & H timely filed its Notice of Appeal on June 15, 1988.

## ISSUE

Whether the bankruptcy court erred in disallowing certain fees and costs of E & H.

## STANDARD OF REVIEW

██ A bankruptcy court's award of attorney's fees will not be disturbed on appeal absent an abuse of discretion or an erroneous application of the law. *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir.1985); *In re Sultan Corp.*, 81 B.R. 599, 601 (9th Cir.BAP 1987); *In re Powerine Oil Co.*, 71 B.R. 767, 770 (9th Cir.BAP 1986). Under the abuse of discretion standard, the Panel must have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached before reversal is proper. *In re Tong Seae (U.S.A.), Inc.*, 81 B.R. 593, 597 (9th Cir.BAP 1988).

## DISCUSSION

### A. The Hafer Claim

██ Bankruptcy Code section 704 sets forth the duties of a trustee in a Chapter 7 liquidation. Such duties include the following:

(1) The duty to collect and reduce to money all property of the estate for which such trustee serves, and close such estate as quickly and expeditiously as is compatible with the best interests of the parties in interest;

(4) Investigate the financial affairs of the debtor;

(5) *If a purpose would be served,* examine proofs of claims and object to the allowance of any claim that is improper ... [emphasis added].

E & H argues that it acted properly and that a valid purpose was served by examining Hafer's claim against the estate. Specifically, E & H contends that such a purpose was served because it led to the discovery of an alleged "apparent misappropriation" of $65,000 from the partnership debtor when the property was acquired from Hafer and Crake. E & H, therefore, believed that the 56.7 hours it spent investigating the Hafer claim served a valid "purpose," even though there were no other creditors of the estate and the estate had sufficient funds to pay the claim and administrative expenses.

Crake, in response, argues that the investigation by E & H was unnecessary due to the solvent condition of the debtor and because none of the general partners challenged the validity of the Hafer claim. Additionally, Crake asserts that the trustee and E & H, by investigating the claim for eighteen months, failed to expeditiously close the estate. Finally, Crake contends that delay resulted in additional expenses in educating a second E & H attorney, Mr. Hessling, who became involved in this matter.

██ The bankruptcy court held that the investigation by E & H was excessive and unnecessary and served no purpose because the general partners had acknowledged the validity of the Hafer claim. The court indicated that although a purpose would have been served if other creditors would have benefited from the trustee's actions, such was not the situation in the present case. Only the trustee objected to the Hafer claim. We agree with the bankruptcy court's conclusion that "[w]hen a cost benefit analysis indicates that the only parties who will likely benefit from an investigation of a claim are the trustee and his professionals, investigation is unwarranted." *In re Riverside–Linden Investment Co.*, 85 B.R. 107, 111 (Bankr.S.D.Cal. 1988). The court further indicated that the trustee's "main duty" under section 704 is "to close the estate as quickly and expeditiously as is compatible with the best interests of the parties in interest...." *Id.*

Although the trustee initially had a duty to investigate the Hafer claim, an eighteen month investigation which included the addition and education of a second attorney exceeded the trustee's duties and responsibilities to the estate. Such delays by the

trustee, particularly in light of the fact that no other creditors remained or objected to the Hafer claim, supports our conclusion. As indicated by the bankruptcy court:

> [b]y remaining in an active posture, the trustee served only to multiply the proceedings and parties and incur additional administrative expenses.

*Id.* Once it became apparent that the estate was solvent and no other creditors remained or objected to the Hafer claim, the trustee should either have sought dismissal of the bankruptcy case, or proceeded with distribution of the bankruptcy estate in accordance with section 726. Accordingly, we hold that the bankruptcy court correctly disallowed the indicated fees relating to the Hafer claim.

### B. Crake's Motion to Compel Distribution or Dismiss

#### 1. *Crake's partnership interest is not a "claim" within the meaning of Section 101(4).*

E & H asserts that the Code's definition of "claim" is broad enough to include the interest of a general partner because such interest represents a contingent right to payment based upon an equitable ownership interest in the debtor. To substantiate its position, E & H cites California Corporations Code section 15038 for the premise that each general partner has a legal right to payment in cash upon dissolution of the partnership from any surplus in the partnership. This, it contends, constitutes a "claim."

Section 101(4)(A) of the Bankruptcy Code defines a "claim" as "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...."

■ A general partner's interest and right to share in a distribution of surplus funds of a solvent debtor is not a "claim" within the definition set forth in section 101(4) of the Code. The legislative history of the Bankruptcy Reform Act of 1978 indicates that while the scope of the word "equitable" is not clear from a plain reading of the statute, it is clear that partners in a debtor partnership are not claim holders by virtue of their partnership interest. H.R.Rep. No. 595, 95th Cong., 1st Sess. 197 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787. An ownership interest is not a debt of a partnership. Partners own the partnership subject to its profits or losses. Creditors, however, hold claims regardless of the performance of the partnership business. Thus, an ownership interest is not a claim against the partnership. To hold otherwise would create great confusion among other sections of the Code. *See, e.g.,* 11 U.S.C. §§ 303(b)(1), (2), and (3).

Appellant's argument that general partners have claims rather than interests is based, in part, on the argument that general partners do not fit within the definition of equity security holders. The definition is not all encompassing and general partners are interest holders. The term "interest" is undefined under the Bankruptcy Code, although certain types of interest holders are included in the definition of "equity security holder." 3 *Norton Bankruptcy Law & Practice* §§ 59.05 and 62.04 (1988). In at least two Chapter 11 partnership cases, the bankruptcy court refused to appoint a committee of general partners because section 1102 only permits appointment of creditor and equity security holders committees, and general partners are neither equity security holders nor creditors. *In re Westgate General Partnership,* 55 B.R. 560 (Bankr.E.D.Pa.1985); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,* 85 B.R. 13 (Bankr.S.D.N.Y.1988).

#### 2. *The trustee lacked standing to object to Crake's motion to dismiss or compel distribution.*

■ In *In re Hall,* 15 B.R. 913 (9th Cir.BAP 1981), the Bankruptcy Appellate Panel considered the question of whether a trustee had standing to object to the debtor's motion to dismiss. The Panel held that "[u]nless the creditor affirmatively consents to the dismissal the trustee will have standing to object on the creditor's behalf." *Hall,* 15 B.R. at 916. The Panel additional-

ly stated that "[w]here all creditors affirmatively consent to the debtor's motion to dismiss it clearly follows that the trustee only has standing to object on the grounds that his fees, costs or expenses must be paid before the case may be dismissed." *Id.*

E & H argues that, since none of the other general partners who filed proofs of claim affirmatively consented to Crake's motion to compel or dismiss, the trustee has standing to object because general partners are creditors of the estate. E & H also contends that an offer of proof was accepted by the bankruptcy court whereby at least one of the bankruptcy trustees of the other general partners requested that the bankruptcy trustee in the instant case oppose Crake's motion to dismiss and pursue remedial action concerning the alleged misappropriation of partnership funds by Hafer and Crake. Accordingly, E & H argues that the bankruptcy court should have allowed its attorneys' fees and costs incurred in opposing Crake's motion because such services were "necessary."

The bankruptcy court held that the trustee had no standing to object to Crake's motion, except to insure payment of his fees, costs and expenses, because Hafer, the sole remaining creditor, had affirmatively consented to the dismissal. *Riverside–Linden,* 85 B.R. at 113. The court further indicated that while Crake, and not the debtor, brought the motion to dismiss, "this court can find no reason why the rationale and holding in *Hall* is not equally applicable to Crake's motion." *Id.*

We agree with this determination. The bankruptcy court properly disallowed the fees and costs incurred in connection with the opposition to Crake's motion to dismiss or compel distribution. Finally, we note that the bankruptcy court specifically found that there was no evidence to support E & H's assertion that representatives of general partners supported these investigations. *See Id.* at 113 n. 9.

3. *The trustee was not authorized to act on behalf of the general partners.*

■■■■ A trustee's duty is to the estate and its creditors or claim holders, 11 U.S.C.

§ 704(1), and not with the representation of general partners of a partnership debtor. *See Riverside–Linden,* 85 B.R. at 113. Since we already have concluded that general partnership interests are not "claims," general partners cannot be creditors based solely on their partnership interests. *Id.* Accordingly, the bankruptcy court correctly held that "[t]o the extent that the trustee acted at the request of some of the general partners and not solely in the interests of creditors of the estate, he must be considered a volunteer, and the services rendered to this extent [are] non-compensable." *Id.*

We therefore conclude that the bankruptcy court properly disallowed all fees incurred by the attorneys for the trustee in connection with Crake's motion to dismiss or compel distribution and all fees incurred in the motion for disallowance or equitable subordination of Crake's partnership interest.

C. *Trustee's Duty to Prepare Partnership Tax Returns*

E & H argues that its services were reasonable and necessary to assist the trustee in performing his duties in connection with the informational tax returns. Specifically, E & H argues that an in-depth analysis of the debtor's transactions prior to the filing of its petition regarding the partnership's formation and history was necessary to reconstruct the debtor's books and reconcile discrepancies for the purpose of filing informational tax returns. E & H further asserts that it acted with due diligence and properly investigated the minor debts which impeded the filing of informational tax returns. Finally, E & H argues that the court erred in concurring with Crake's suggestion that such debts simply be treated in a manner most favorable to the IRS.

■■■■ In disallowing the fees incurred by E & H in its extensive discovery and investigation into the history and formation of the debtor, the bankruptcy court held that such investigation went far beyond the

scope of the duties of the trustee to file tax returns on behalf of the partnership. A Chapter 7 trustee simply is required to file informational tax returns for a debtor partnership for the period during which he is appointed. 11 U.S.C. §§ 346(a), (c)(2), and 728(b); 26 U.S.C. § 6031. The court, therefore, correctly held that "to the extent that E & H's . . . fees [were] incurred in connection with investigation for purposes other than preparation of informational tax returns for the years 1984 through 1987, such fees are not compensable." *Riverside–Linden*, 85 B.R. at 115.

The court additionally recognized that, rather than conducting an extensive investigation of unresolved minor debts of the partnership which impeded the preparation of the informational tax returns, the trustee simply should have treated such debts in a manner most favorable to the IRS. *Id.* Relying on the premise that the trustee's main duty is to expeditiously close the estate and judiciously preserve the assets of the estate compatibly with the best interests of the parties, the court disallowed all fees incurred by E & H in connection with its investigation of these minor debts subsequent to March 2, 1987, the last date on which Crake suggested such treatment. *Id.*

We agree with the bankruptcy court's conclusions and hold that the trustee went beyond his duties regarding the solvent estate of the debtor. We therefore hold that such fees incurred by E & H in investigating and preparing the partnership's tax returns are disallowed as indicated by the bankruptcy court.

## CONCLUSION

The bankruptcy court correctly disallowed fees incurred by E & H in investigating the Hafer claim, in opposing Crake's motion to dismiss or compel distribution, and in investigating the history and formation of the partnership in preparing informational tax returns.

The holding of the bankruptcy court, therefore, is AFFIRMED.