**In re Gladys J. GRIGGS, Debtor.**

**Bankruptcy No. 93–57551.**
**SSAN: 375–38–9585.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

May 26, 1994.

Charles D. Underwood, Columbus, OH, for debtor.

Arnold S. White, Chapter 7 Trustee, Columbus, OH.

Alexander G. Barkan, Office of U.S. Trustee, Columbus, OH.

## MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

On March 24, 1994, the Court conducted a hearing on an Application for Authority to Employ Collection Agency, filed by Arnold S. White ("Trustee"). In the Application, the Trustee seeks authority pursuant to 11 U.S.C. § 327(a) to retain the services of Charlene Dunbar of Children's Support Services of Ohio, Inc. ("Dunbar") to assist in the collection of child support arrearage owed to Gladys J. Griggs ("Debtor"). At the conclusion of the hearing, the matter was taken under advisement.

On December 17, 1993, the Debtor filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code. In the schedules, the Debtor listed one secured claim in the amount of $750, and unsecured claims in the total amount of $9,207. The Debtor has entered into two reaffirmation agreements. The largest unsecured claim is held by Park National Bank in the amount of $3,792 for a deficiency based upon an uninsured automobile accident. As indicated by the Debtor at the hearing, this claim precipitated the filing.

According to the schedules, the Debtor is divorced, has been employed as a housekeeper at Riverside Methodist Hospital for fourteen years, and her net monthly take home pay of $1,030 is in balance with her monthly expenses. On Schedule B—Personal Property, the Debtor scheduled child support arrearage; however, no amount was specified, and the Debtor has not claimed any exemption to the arrearage.

On December 22, 1993, the Trustee was appointed, and the meeting of creditors was conducted on January 24, 1994. On January 27, 1994, the Trustee filed an Application for Authority to Employ his law firm, known as White & Associates, as counsel for the Trustee for the specified purpose of collecting the scheduled child support arrearage. On February 2, 1994, this Court entered an Order Authorizing Trustee to Employ White & Associates. Subsequently, on March 1, 1994, the Trustee filed the instant Application. In the Application, the Trustee seeks authority to retain the collection services of Dunbar that specializes in the collection of support. It is proposed that Dunbar would receive as compensation twenty percent (20%) of the total child support arrearage collected.

At the hearing on the Application, the Court learned that the child support arrearage dates back to 1979, and that the father of the children, all of whom are now emancipated, resides in Michigan. The Debtor indicated that the last collection efforts occurred approximately five years ago. According to the Trustee, the child support arrearage is the only asset to be administered.

A representative of Dunbar indicated that they have a successful collection rate of from forty to fifty percent, depending on the age of the case. Also, it was represented the fact that the children are now emancipated is .not significant since very few states have a statute of limitations on child support, even after emancipation. The Trustee indicates that the child support was in the amount of $140 per week.

■ In chapter 7 liquidation cases, the Court has two concerns: one, that the Trustee fulfill his or her obligation to administer nonexempt assets for the benefit of creditors as expeditiously as practicable, and two, that the debtors receive a "fresh start" by virtue of their discharge of prepetition obligations and maintenance of all exempt assets. *See* 11 U.S.C. § 704(1); H.R.Rep. No. 595, 95th Cong., 1st Sess. 379 (1977), S.Rep. No. 989, 95th Cong., 2d Sess. 93 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; 11 U.S.C. §§ 522 and 524. *In re Ferkauf, Inc.,* 42 B.R. 852 (Bankr.S.D.N.Y.1984), *aff'd* 56 B.R. 774 (S.D.N.Y.1985).

The trustee's duty to administer nonexempt assets, however, must be tempered with reason with reference to the collectability of the assets and the amount of administrative expenses that must be incurred in order to effect a recovery. There is little sense in administering a nonexempt asset and spending so much on the recovery that either the only parties being paid are professionals, or the creditors receive an extremely small dividend, that is paid to the Treasury, as unclaimed funds pursuant to Bankruptcy

Rule 3010(a), or paid to creditors that must incur additional costs in just processing the small amounts received. *See In re Riverside–Linden Inv. Co.,* 85 B.R. 107, 110–111 (Bankr.S.D.Cal.1988), *aff'd* 99 B.R. 439 (9th Cir. BAP 1989), *aff'd* 925 F.2d 320 (9th Cir. 1991). Where this happens, the effect is that there has been little or no benefit to creditors, and the debtor has been in essence penalized by the administration of the asset, that if it has any value at all, probably has more value to the debtor than to creditors. This state of affairs can only exacerbate the negative image of the legal system.

■ The best means to reduce the possibility that creditors will receive little or no return requires trustees in the first instance to exercise some economic judgment in determining whether it makes any financial sense to administer assets.[1] The Court in the second instance must make sure that such a thought process has occurred and is amply demonstrated prior to entering retention orders. *See In re Zeus America Management Consultants, Inc.,* 27 B.R. 853, 854 (Bankr.N.D.Ohio 1983); *In re Metropolitan Hospital,* 119 B.R. 910, 919 (Bankr.E.D.Pa. 1990); *In re Providence Television,* 113 B.R. 446, 451 (Bankr.N.D.Ill.1990); *In re Crutcher Transfer Line, Inc.,* 20 B.R. 705, 712 (Bankr. W.D.Ky.1982); *In re Carolina Sales Corporation,* 45 B.R. 750, 754–755 (Bankr.E.D.N.C. 1985).

■ The justification for the retention in the instant case is twofold. First, it can be argued that the Debtor's financial condition was effected by the failure of her former spouse to pay child support, and that the debts and bankruptcy filing resulted. Second, it can be argued that the creditors, who in effect subsidized the Debtor due to the lack of child support, should be entitled to some recovery by administration of the support arrearage.

---

1. The Court recognizes that there will always be cases that unpredictably result in no or *de minimus* distributions to creditors, and in such instances trustees and their professionals should not be penalized as they are not guarantors of a good result. However, trustees and their professionals must exercise significant and early judg-

ment to determine whether an administration will have any value, and where such judgment has not been demonstrated or exercised, retention requests should be denied or circumscribed and compensation levels reduced. *See In re Melenyzer,* 140 B.R. 143, 155 (Bankr.W.D.Tex. 1992).

It is obvious that the receipt of such funds would have been helpful to the Debtor and the children, but it is also obvious that the instant filing was not directly caused by the lack of child support but rather the deficiency. The Debtor has been gainfully employed for a substantial period, has a relatively low level of indebtedness except for the deficiency, and unlike many debtors, the amount of her monthly expenditures at least on paper matches her monthly income. The Debtor was even able to enter into two reaffirmation agreements. Also, the children are now emancipated. In the instant case, the "fresh start" that the Debtor sought will be accomplished by the issuance of a discharge.

With reference to providing some compensation to creditors, it must be noted that no child support payments have been made since 1979, and no collection efforts have been made in the last five years, although today most states are aggressive in their efforts to collect from defaulting spouses. Dunbar has estimated a success rate of from forty to fifty percent, and will charge twenty percent of any funds collected, and of course, any balance will be subject to the fees of the Trustee pursuant to 11 U.S.C. § 326(a) and his counsel pursuant to 11 U.S.C. § 330(a). This fifteen-year-old receivable is also the only asset to be administered. Whether creditors will ever receive any compensation is far from sure. Given what has been presented to the Court, it cannot currently see much economic sense to the administration of the arrearage and instead sees a venture that is at best speculative.

All of these factors lead the Court to conclude that the instant retention request, and indeed the further administration of this single-asset estate, should be circumscribed. While the Court is extremely skeptical as to the collectability and value of the administration of the arrearage, given the fact that the amount of support at $140 per week may be significant, the Court is willing to allow the retention for a limited period of six months from the date of entry of this Order. Prior to the expiration of this period, the Trustee will be required to seek an extension and provide detailed information on the progress made, including a projected net recovery to the estate after payment of all professional fees, if he determines that continued administration is appropriate. Such a request will be carefully scrutinized. Otherwise, at the end of the six-month period this case should be closed.

All future professional retention requests filed by the Trustee, including counsel for the Trustee, must detail the assets to be administered, a projected amount of professional fees, a projected level of recovery, and any factors that will influence the ability to collect. The provision of such information will provide indicia that economic judgment has been exercised and should reduce the necessity for future hearings on retention requests.

IT IS SO ORDERED.