IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 92-2729

———————————

In the Matter of:  William H. Davis, Debtor

JAMES L. SHEERIN,

                                        Appellee,

                    versus

WILLIAM H. DAVIS,

                                        Appellant.

———————————

Appeal from the United States District Court
for the Southern District of Texas

———————————

(     September 15, 1993     )

Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

     James Sheerin won a fraud judgment against William Davis in
Texas state court.  Davis then took refuge in bankruptcy.  We find
that Sheerin produced enough evidence before the bankruptcy court
to save his judgment from discharge.  We also find that the
equitable remedies ordered by the Texas state court are not
dischargeable.

I.

     William Davis and James Sheerin once owned the W.H. Davis
Company.  Davis was the majority stockholder and Sheerin was the
minority owner.  After Davis tried to freeze out Sheerin, Sheerin

sued and won in state court. The trial court found that Sheerin owned a 45% interest in the corporation, a 45% interest in a partnership, and six tracts of land found to be partnership assets. It issued several orders and awards based on that finding, including an award of $20,893 for Davis receiving informal dividends to the exclusion of Sheerin, an order that Davis pay $550,000 to buy out Sheerin's stock, and several equitable remedies to preserve the value of Sheerin's interests in the corporation, partnership, and the six tracts of land. A Texas court of appeals affirmed the judgment in substantial part. Davis v. Sheerin, 754 S.W.2d 375 (Tex. App.—Houston [1st Dist.] 1988, writ denied). Davis then filed for bankruptcy.

Sheerin objected to the dischargeability of the debts arising from his judgment against Davis, contending that the facts he had proven in state court established the elements of a nondischargeable claim. The evidence at trial in the bankruptcy court consisted of the state trial court judgment, the jury instructions and answers to special issues, the appellate court opinion, and testimony of the parties. Sheerin did not introduce the trial record.

The bankruptcy court noted that the state appellate court decision referred "in detail to certain undisputed evidence that the trial court considered" (emphasis in original). The court found this to be clear and convincing evidence that the debts of $550,000 and $20,893 derived from acts of "defalcation while acting in a fiduciary capacity" and were not dischargeable. 11 U.S.C.

2

§ 532(a)(4). The court also found that some of the equitable remedies ordered by the state court were not dischargeable because they are not "debts" within the meaning of 11 U.S.C. §§ 101(4) and (11).[1] Davis appealed to the district court.

In the meantime, the Supreme Court held that the standard of proof for the dischargeability exceptions in § 523(a) is the preponderance of the evidence standard. Grogan v. Garner, 111 S. Ct. 654, 658-59 (1991). Because the bankruptcy court applied the more stringent clear and convincing evidence standard, the district court saw no need to remand and affirmed the decision. Davis then appealed to this court.

## II.

We first examine the conclusion that the $550,000 buy-out and the $20,893 in damages ordered by the state court against Davis are non-dischargeable debts pursuant to 11 U.S.C. §§ 523(a)(4). The Supreme Court has recently reaffirmed that issue preclusion principles apply in section 523(a) discharge exception proceedings. Grogan, 111 S.Ct. at 658 & n.11. This circuit recognizes three requirements for application of issue preclusion: (1) the issue to be precluded must be identical to that involved in the prior action; (2) in the prior action the issue must have been actually litigated; and (3) the determination made of the issue in the prior action must have been necessary to the resulting judgment. In re

---

[1]The bankruptcy court found that Sheerin did not produce sufficient evidence on other aspects of the state court judgment and found them discharged. Sheerin does not appeal those findings.

Shuler, 722 F.2d 1253, 1256 n.2 (5th Cir. 1984). Davis contends that Sheerin's failure to introduce the trial record from the state trial bars the use of issue preclusion. We have not imposed such a requirement in the past and decline to do so today. See Matter of Allman, 735 F.2d 863, 865 (5th Cir.), cert. denied, 469 U.S. 1086 (1984); Shuler, 722 F.2d at 1257; Carey Lumber Co. v. Bell, 615 F.2d 370, 376-78 (5th Cir. 1980). See also In re Church, 69 B.R. 425, 430 (Bankr. N.D. Tex. 1987) (stating that while a transcript is "as detailed a record as is possible" the Fifth Circuit only asks if "the record supporting the state court judgment is sufficiently detailed"). See generally Jeffrey T. Ferriell, The Preclusive Effect of State Court Decisions in Bankruptcy, 58 Am. Bankr. L.J. 349, 360-61 (1984) ("[I]t is doubted whether a full transcript should be required, or even whether it would be helpful, in most cases."). The opinions and jury questions introduced in this case have sufficient detail to allow the use of issue preclusion.

The Supreme Court's recent Grogan v. Garner decision does not require presentation of the trial record to the bankruptcy court. The successful plaintiffs in Grogan introduced only "portions of the record" from the prior state case into evidence before the bankruptcy court. 111 S.Ct. at 656. Those portions included copies of the creditor's first amended complaint, the jury instructions, the jury verdict, the district court judgment, the appellate court opinion, and a letter from the appellate court transmitting the opinion. The trial transcript was not introduced.

4

In re Garner, 73 B.R. 26, 27 (Bankr. W.D. Mo. 1987) (bankruptcy opinion in Grogan).

Having found that Sheerin's failure to introduce the trial transcript is not a per se bar to the application of issue preclusion, we turn to the specific dischargeability issues contested by the parties. The controlling Code provision is section 523(a)(4), excepting from discharge "any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[2] "Defalcation" includes willful neglects of duty unaccompanied by fraud or embezzlement. Matter of Moreno, 892 F.2d 417, 421 (5th Cir. 1990); Carey Lumber, 615 F.2d at 375-76; Central Hanover Bank & Trust v. Herbst, 93 F.2d 510 (2d Cir. 1937) (L. Hand, J.).

We begin by reviewing Sheerin's allegations in state court and the evidence supporting them. The $550,000 debt arises from the jury's finding that Davis entered a conspiracy to deprive Sheerin of his stock ownership in W.H. Davis Co.[3] The trial court reasoned that this behavior showed Davis had "acted oppressively" toward Sheerin and ordered that Davis buy Sheerin's stock. The court of appeals affirmed this conclusion, clarifying the meaning of "oppressive conduct":

---

[2]Sheerin also contested discharge under section 523(a)(6), which excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." The bankruptcy court only relied on § 523(a)(4). As we find its reliance on § 523(a)(4) to have been proper we do not reach the applicability of any other sections.

[3]The findings about the conspiracy are in answer to special issues 23-26.

burdensome, harsh and wrongful conduct, a lack of probity and fair dealing in the affairs of a company to the prejudice of some of its members, or a visible departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely.

Davis v. Sheerin, 754 S.W.2d 375, 382 (Tex. App.—Houston [1st Dist.] 1988, writ denied) (quoting Baker v. Commercial Body Builders, Inc., 507 P.2d 387, 393 (Ore. 1973)). It cited the following undisputed evidence as supporting the trial court's conclusion that oppressive conduct had occurred:

(1) [The Davises] claimed that [Sheerin] had gifted them his stock in the late 1960's, even though the records of the corporation and income tax returns through 1986 clearly show [Sheerin] as a 45% stockholder, and [the Davises] and/or their son had made several attempts to purchase [Sheerin's] stock in the 1970's and 1980's;

(2) a letter from the corporation's attorney dated May 16, 1979, referred to appellant Davis' "wish to avoid declaring dividends and disburse the surplus in the form of bonuses to the officers of the corporation" and the fact that such action may result in an allegation by [Sheerin] of "fraudulent intent to deny a shareholder his right to dividends" and "would probably be characterized as a direct effort to deny a shareholder his dividends."

Id. at 382.

The $20,893 judgment debt arises from Davis's receipt of informal dividends by making profit sharing contributions for his own benefit and to the exclusion of Sheerin. The jury found that these contributions were willfully made in breach of a fiduciary duty and were the proximate cause of damages to Sheerin.[4] The judge entered a judgment for $20,893 based on those findings.[5]

---

[4]These answers are to special issues 30A-30D.

[5]The jury found in special issue 31 that Sheerin had suffered no damages, but the judge granted Sheerin's JNOV motion

This decision was supported by the letter of May 16, 1979, detailing Davis' wish to disburse surplus funds to the corporation's officers.

These findings are sufficient to prevent discharge of both debts under section 523(a)(4). They result from the actual litigation of facts necessary to obtain judgment against Davis, and they describe willful acts by Davis contrary to his fiduciary obligations as an officer of the W.H. Davis Company. See Gierson v. Parker Energy Partners, 737 S.W.2d 375, 377 (Tex. App.—Houston [14th Dist.] 1987, no writ). The debt arose from a remedy imposed because of those acts. Accordingly, we affirm the district court's finding that Sheerin's $20,893 and $550,000 judgment debts avoid discharge.

### III.

Davis also argues that the equitable remedies of resulting trust, partition in kind, deed reformation, appointment of a receiver, and dissolution of a partnership ordered by the state court against him are dischargeable. He notes that discharge of debts is proper if the underlying claim is a "right to equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5)(B). He contends that since failure to perform his obligations under any of the equitable remedies would justify an award of money damages, all the remedies are dischargeable.

---

and entered judgment for $20,893 based on the jury's findings on the previous special issues.

We decline to define "claim" so broadly. Section 101(5)(B) is designed to cause the liquidation of contingent claims for money damages that are alternatives to equitable remedies:

> Section 101(4)(B) . . . is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a judgment for specific performance may be satisfied by an alternative right to payment in the event performance is refused; in that event, the creditor entitled to specific performance would have a `claim' for purposes of a proceeding under title 11.

Ohio v. Kovacs, 105 S.Ct. 705, 708 (1985) (quoting 124 Cong. Rec. 32393 (1978) (remarks of Rep. Edwards)). The ability of a debtor to choose between performance and damages in some cases is not the same as a debtor's liability for money damages for failing to satisfy an equitable obligation. See In re Chateaugay Corp., 944 F.2d 997, 1007-08 (2d Cir. 1991). While section 101(5)(B) encourages creditors to select money damages among from alternative remedies, it does not require creditors entitled to an equitable remedy to select a suboptimal remedy of money damages.

With that background established, we examine the disputed remedies to determine if alternate remedies of money damages exists. The first three remedies affect six tracts of land once owned by the parties' partnership. The trial court found that Sheerin was entitled to a 45% interest in the tracts and then ordered reformation of the title deeds to reflect that interest, placement of Sheerin's interest in a resulting trust under Davis's control to prevent its misuse, and sale of the properties to be

8

followed by proportional sharing of the proceeds. The court of appeals affirmed except for the forced sale. It noted that Texas law favors a fair and equitable partition in kind over a forced sale and division of proceeds. Davis, 754 S.W.2d at 388. It then reversed the judgment awarding a forced sale because of a lack of findings showing that the property was not susceptible to division and ordered a partition in kind in its place.

We find that the resulting trust remedy does not have a money damage alternative. The judgment says nothing about money. It simply notes that Sheerin owns a 45% fee simple interest in those tracts, and that Davis will be charged with using his legal title to the property "for the use and benefit" of both Sheerin and himself "according to their respective ownership interests." Under such circumstances Texas law does not view the payment of money as an alternative to the maintenance of the equitable owner's interest in the property, even though the law may provide for an award of money damages. See Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256, 262-64 (1951). This remedy is analogous to an injunction preventing Davis from committing future wrongs, an intangible command incapable of precise monetary estimation. See Chateaugay, 944 F.2d at 1008; In re Oseen, 133 B.R. 527, 530 (Bankr. D. Idaho 1991). Cf. Kovacs, 105 S.Ct. at 710 (discharging a claim when the creditor's equitable relief "had been converted into an obligation to pay money"). See generally Douglas Laycock, The Death of the Irreparable Injury Rule, 103 Harv. L. Rev. 688, 716-17 (1990). We find that bankruptcy did not discharge this remedy.

9

We take a similar view of the remedy of reformation. The trial court viewed this as a prospective remedy imposed "in order to prevent further inequitable conduct on the part of . . . Davis." Money is not an alternative to this kind of command. This remedy is also not dischargeable.

The third remedy is partition in kind of the property. As a general matter, a forced sale can be an alternative to this remedy. But it is not a preferred remedy under Texas law. See Rayson v. Johns, 524 S.W.2d 380, 382 (Tex. Civ. App.—Texarkana 1975, writ ref'd n.r.e.). It is also a remedy that the Texas court of appeals found to be unavailable given the jury findings in this case. Because under Texas law no alternate remedy exists we find this remedy nondischargeable as well.

The last two remedies involve the court's treatment of the business associations between the parties. The trial court ordered that a receiver be appointed to "conserve the assets of W.H. Davis Co.," and that the real estate partnership between Sheerin and Davis be dissolved. Davis correctly concedes that these remedies are not dischargeable. Rather, he contests the nondischargeability of debts that might arise from these remedies in the future: debts which might flow to Davis from the services rendered by the receiver, and debts which might flow to Davis from the dissolution of the partnership. We decline to analyze the dischargeability of these hypothetical debts until their properties become more certain. See Middle South Energy, Inc. v. City of New Orleans, 800 F.2d 488, 490-91 (5th Cir. 1986).

10

AFFIRMED.