OPINION OF , THE COURT
COWEN, Circuit Judge.
In this appeal we must decide whether an equitable demand for reinstatement of an interest in a partnership constitutes a “claim” within the meaning of section 101(5)(B) of the Bankruptcy Code. Both the Bankruptcy Court and the District Court held that it was not and refused to enjoin appellee B.F. General Associates (“BFG”) from pursuing the demand in state court litigation against debtor Ben Franklin Hotel Associates (“Ben Franklin” or “debtor”) after confirmation of debtor’s reorganization plan. Although we analyze the matter somewhat differently than the Bankruptcy Court and the District Court, we will affirm.
I.
Debtor is a limited partnership created to own and redevelop a property in downtown Philadelphia formerly known as the Ben Franklin Hotel, a widely known institution located at the intersection of Ninth and Chestnut Streets in Philadelphia. At the time of its formation in 1984, debtor’s general partners were a group a California investors and BFG. Appellee Alfred Gilbert held a non-controlling general partnership interest in BFG.
In July 1991, debtor issued a “cash call,” requiring that all of the partners contribute a certain amount of additional capital to the partnership. When BFG failed to respond, debtor foreclosed on BFG’s ownership interest, as provided for in the partnership agreement. Although BFG did not object to this foreclosure, Gilbert did. On October 6, 1992, Gilbert filed a lawsuit in the Pennsylvania State Court against debtor, BFG, and their respective interest holders. Gilbert alleged, inter alia, that the foreclosure and sale of BFG’s partnership interest was a sham, intended to di *303 vest him of his indirect interest in debtor.[1] In his lawsuit, Gilbert sought damages in excess of $2,000,000, as well as equitable relief that included the reinstatement of BFG’s partnership interest in debtor.
Approximately fourteen months after Gilbert filed suit, debtor filed a voluntary petition for Chapter 11 bankruptcy, which listed a California corporation known as Civieorp as Ben Franklin’s only general partner. The petition was signed solely by Civicorp’s president.[2] 'By order dated January 11, 1994, the Bankruptcy Court set March 1, 1994 as the bar date for filing proofs of claim. Prior to the bar date, Gilbert filed a proof of claim in the amount of “$2,000,000 + ” based on the “[wjrongful exclusion from partnership interest in debtor,” app. at 27, and attached a- copy of his state court complaint to the proof of claim. BFG did not file a proof of claim.
The Bankruptcy Court confirmed debt- or’s proposed plan of reorganization by order dated March 3’ 1994. The Bankruptcy Court subsequently modified the automatic stay to allow Gilbert’s state court action to proceed, subject to the Court’s continuing jurisdiction to determine the allowability of any monetary judgment that Gilbert obtained in the state proceeding.
After Ben Franklin’s reorganization plan was confirmed, Gilbert settled the state court claims against BFG and his partners in their entirety. As a result of the settlement, Gilbert obtained a controlling interest in BFG. Gilbert then obtained leave of the state court to file an amended complaint to change BFG’s status from a defendant to a co-plaintiff. The amended complaint also added a cause of action for conversion against debtor, increased the request for damages from $2,000,000 to over $5,000,000, and added a demand for punitive damages. In response to these amendments, debtor moved the Bankruptcy Court to enforce the discharge injunction by: (i) enjoining Gilbert from maintaining any “new” causes of action against it other than those incorporated by Gilbert’s original proof of claim; (ii) enjoining BFG from asserting any causes of action against it; and (iii) holding BFG and Gilbert in contempt. Debtor argued, inter alio, that Gilbert’s new allegations and demands (i.e., the claims for conversion, increased monetary damages, and punitive damages) and BFG’s entire lawsuit were pre-petition “claims” within the meaning of the § 101(5) of the Bankruptcy Code, and were, therefore, discharged upon confirmation of debtor’s reorganization plan.
The Bankruptcy Court granted the motion in part and denied it in part. In a decision not challenged on appeal, the Court enjoined BFG from pursuing monetary damages for injuries caused by the allegedly fraudulent cash call because such a demand constituted a claim against debt- or’s estate that was barred by confirmation of debtor’s reorganization plan. The Bankruptcy Court refused, however, to enjoin BFG from pressing its demand for reinstatement of its partnership interest on the ground that an ownership interest in a partnership is not a claim or debt of the partnership and-, therefore, not subject to bankruptcy discharge. The Bankruptcy Court also declined to enjoin Gilbert at all, holding that each of the new demands and allegations to which debtor was objecting was encompassed within Gilbert’s original *304 proof of claim. Finally, the Bankruptcy Court declined to hold either BFG or Gilbert in contempt. On appeal, the District Court affirmed, largely approving the reasoning of the Bankruptcy Court. This appeal followed.
Because the District Court sat as an appellate court reviewing an order of the Bankruptcy Court, we exercise plenary review. In re Trans World Airlines, Inc., 145 F.3d 124, 130 (3d Cir.1998). “[W]e review the bankruptcy court’s legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof.” Id. at 131.
II.
Debtor’s primary argument on appeal is that the Bankruptcy Court and District Court erred in concluding that BFG was not barred from pursuing its equitable demand for reinstatement of its partnership interest in the state court action. It maintains that BFG lost its right to assert this equitable demand by failing to raise the issue during the bankruptcy proceedings' before debtor’s reorganization plan was confirmed.
Section 1141(d)(1)(A) of the Bankruptcy Code states: “Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan ... discharges the debtor from any debt that arose before the date of' such confirmation....” 11 U.S.C. § 1141(d)(1)(A). Section 524(a)(2) of the Bankruptcy Code further implements the statutory discharge and finality provided by § 1141. It provides that the discharge “operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor.” 11 U.S.C. § 524(a)(2). Interpreting these provisions, among others, this court has held that “[a] confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation.” Donaldson v. Bernstein, 104 F.3d 547, 554 (3d Cir.1997) (quoting In re Szostek, 886 F.2d 1405, 1408 (3d Cir.1989)).
Here, the parties do not dispute that BFG’s demand for reinstatement of its partnership interest arose before debtor’s reorganization plan was confirmed. Instead, they contest whether BFG’s equitable demand can properly be classified as a “debt” or “claim” within the meaning of the Bankruptcy Code.
Under the Code, a “debt” is defined as a “liability on a claim.” 11 U.S.C. § 101(12). A “claim” is defined, in relevant part, as:
[the] right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputes, undisputed, secured, or unsecured[.]
11 U.S.C. § 101(5)(B).
This provision was interpreted by the Supreme- Court in- Ohio v. Kovacs,' 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). In that case, Ohio had obtained an injunction ordering Kovacs to clean up a hazardous waste site. When Kovacs failed to' comply with the’ injunction, a receiver was appointed to take possession of Ko-vacs’ property and to implement the injunction. Kovacs then filed for bankruptcy before the cleanup was completed. The question before the Court was whether the obligation of Kovacs under the injunction was a “debt” or “liability on a claim” under the Bankruptcy Code. Id. at 276-77, 105 S.Ct. 70S.' Endorsing the reasoning of the lower courts, the Supreme Court held that because Kovacs had been dispossessed from the property and the only thing that Ohio sought from him was the money to defray cleanup costs, the' cleanup order had essentially been converted into a monetary obligation. Id. át 282-83, 105 S.Ct. 705. Accordingly, the Court held, the in-junctive order was a.“elaim” that was dis-chargeable in bankruptcy. Id.
*305 Interpreting § 101(5)(B) in light of Ko-vacs, this court has stated that an equitable remedy will “give rise to a right of payment,” and therefore be deemed a “claim,” when the payment of monetary damages is an alternative to the equitable remedy. .Air Line Pilots Association v. Continental Airlines, 125 F.3d 120, 133 (3d Cir.1997) (citing Matter of Udell, 18 F.3d 403, 407 (7th Cir.1994) (“[0]ne example of a ‘claim’ is a right to an equitable remedy that can be satisfied by an ‘alternative’ right to payment.”)). Thus, in Air Line Pilots, where an award of monetary damages was a “viable alternative” to the equitable remedy sought by plaintiffs— specific performance of the obligation to provide seniority integration to certain workers — this court held that the asserted equitable relief should be treated as a “claim.” 125 F.3d at 120; see also In re Torwico Electronics, 8 F.3d 146 (3d Cir. 1993).
Also instructive is the Fifth Circuit’s decision in Sheerin v. Davis (In re Davis), 3 F.3d 113, 116 (5th Cir.1993). The plaintiff in Davis was a partner, Sheerin, who, like BF.G, alleged he was fraudulently deprived of an interest in a partnership that owned real property. Among other things, Sheerin claimed that his.partner had wrongfully converted partnership property, including certain parcels of real estate, to his own use. Sheerin sued his former partner in state court and obtained a final judgment in. his favor. The state court ordered, inter alia, the equitable remedies of a resulting trust, partition in kind, and deed reformation. The losing partner then filed for bankruptcy, protection and sought to have the equitable remedies discharged. Affirming the bankruptcy court, the Court of Appeals -for the Fifth Circuit refused to do so on the ground that monetary damages were not a sufficient alternative to any of the equitable remedies that. Sheerin had obtained. Id. at 116-17.
In rejecting debtor’s contention that' BFG’s equitable demand for reinstatement of its partnership interest was a “claim” within the meaning of § 101(5), the Bankruptcy Court and the District Court did not employ the analysis of Kovacs, Air Line Pilots, and Davis. Instead, the courts rested their decisions almost entirely on the Ninth Circuit’s opinion in In re Riverside-Linden Inv. Co., 925 F.2d 320 (9th Cir.1991) (per curiam). ■ In that case, the debtor turned out to be solvent, and one of the' debtor’s general partners, Crake, moved to compel the trustee to distribute a portion of the estate’s surplus. The trustee argued that Crake’s request should be treated as a claim against the estate. The bankruptcy court disagreed, observing that “a general partner’s right to share in a distribution of the surplus funds of a solvent debtor is not a claim.” In re Riverside-Linden Investment Co., 85 B.R. 107, 112 & n. 7 (Bankr.S.D.Cal.1988). The bankruptcy appellate panel affirmed, again emphasizing that “[a] general partner’s interest and right to share in a distribution of surplus funds of a solvent debtor is not a ‘claim’.... ” Estes & Hoyt v. Crake (In re Riverside-Linden Inv. Co.), 99 B.R. 439, 444 (9th Cir. BAP. 1989). On further appeal, the Court of Appeals for the Ninth Circuit affirmed, holding that a partner does not become a “claim” holder by virtue of his partnership interest. The court explained:
[A]n ownership interest in a debtor partnership differs fundamentally from other rights that might be asserted against the partnership^] An ownership interest is not a debt of the partnership. Partners own the partnership subject to profits or losses. Creditors, however, hold claims regardless of the performance of the partnership business. . Thus, an ownership interest is not a claim against the partnership.
In re Riverside-Linden, 925 F.2d at 323 (quoting Estes & Hoyt v. Crake (In re Riverside-Linden Inv. Co.), 99 B.R. 439, 444 (9th Cir. BAP 1989)).
Although we have no quarrel with the reasoning or the result of Riverside-Lin *306 den, we do no't agree with the District Court that it governs the disposition of this case. Riverside-Linden stands for the proposition that a partner who seeks distribution of partnership proceeds is not automatically a claim holder by virtue of his ownership interest. Id.; see also In re Taylor & Associates, L.P., 193 B.R. 465, 475 (Bankr.E.D.Tenn.1996) (“Courts generally agree that limited partners are not creditors of the partnership solely by virtue of their partnership interests.”) (citations omitted). Riverside-Linden does not, however, address the precise situation presented here — one in which an allegedly defrauded partner seeks to have its ownership interest equitably reinstated in litigation that is separate from the bankruptcy proceedings. Under these facts,. it was incumbent on the Bankruptcy and District Courts to have applied the Kovacs and Air Line Pilots standard to determine whether BFG’s proposed equitable remedy constituted a “claim” within the meaning of § 101(5)(B).
That error warrants reversal, however, only if, under the correct legal standard, BFG’s demand for reinstatement is a “claim.” We turn then to the relevant inquiry under Kovacs and Air Line Pilots: whether monetary payment is a viable alternative for BFG’s ■ proposed equitable remedy of reinstatement of its partnership interest. If it is, as debtor argues, then BFG’s state court action must be deemed a “claim” that is barred by the confirmed plan and the discharge injunction. Because the record has been sufficiently developed for us to resolve this legal issue, we need not remand to the District Court to consider it in the first instance. See Chase Manhattan Bank, N.A. v. American Nat’l Bank and Trust Co., 93 F.3d 1064, 1072 (2d Cir.1996) (“[a]n appellate court has the power to decide cases on appeal if the facts in the record adequately support the proper result”) (quoting Stetson v. Howard D. Wolf & Assocs., 955 F.2d 847, 850 (2d Cir.1992)).
In support of its argument that damages are an alternative to BFG’s-equitable remedy of reinstatement, debtor places great; reliance on the fact that BFG and Gilbert prayed for damages as well as equitable relief in their -state court pleadings. App.. Br. at 20. Based on this fact alone, debtor suggests that “there can be no doubt” that BFG and Gilbert’s “primary goal” in this case has always been to recover monetary damages. App. Reply Br. at 3. We are not persuaded by this argument. Even if debtor’s characterization of appellees’ subjective intentions is accurate, it is beside the point. The relevant issue here is not the form of relief that appellees most hoped to achieve in their state court action, but whether damages are an alternative to BFG’s proposed equitable remedy for the loss of its partnership interest. The fact that BFG once sought damages from debt- or (but no longer does), and that Gilbert still presses his claim for damages, does not, in our view, necessarily imply that monetary relief is an alternative to BFG’s equitable demand for reinstatement. Parties routinely seek both money damages and equitable relief arising from the same allegedly wrongful conduct, but that does not mean that one is an “alternative” to the other. In many cases, prayed-for monetary and equitable relief will serve entirely distinct remedial purposes.
Nor do we agree with debtor’s related suggestion that BFG, by originally seeking damages for the loss of its partnership interest in its state court complaint, has somehow conceded that monetary relief is a viable alternative remedy. To the contrary, in that same pleading, both BFG and Gilbert specifically allege that they “do not have an adequate remedy at law because, among other reasons, their losses cannot be properly measured nor adequately compensated for by an award of monetary damages, and because their partnership interests are unique.” App. at 57.
We believe that monetary damages are not an alternative to BFG’s proposed *307 equitable remedy for the loss of its partnership interest. As a limited partnership that has as its primary asset a piece of real property that the Bankruptcy Court characterized as a “well known landmark,” In re Ben Franklin Hotel Associates, Bankr. No. 93-17089, slip op. at 3 (Bankr.E.D.Pa. October 31, 1997), Ben Franklin clearly constitutes a unique business opportunity for its owners. Debtor has not suggested otherwise in either of its briefs to this court. Under Pennsylvania law, money damages are generally not regarded as adequate remedy for the loss of such a business opportunity. In Cochrane v. Szpakowski 355 Pa. 357, 49 A.2d 692 (1946), for example, the Supreme Court of Pennsylvania affirmed an award of specific performance of a contract for the sale of -a restaurant and liquor business. In doing so, the court cited the unique qualities of the business and the fact that future profits would be impossible to ascertain accurately. Id. at 694. Adopting the reasoning of the Court of Common Pleas, the' Supreme Court explained: “‘[t]here are no other premises nor is there any other restaurant which is exactly like the one involved here, and it would, for all practical purposes, be impossible for ... [ap-pellee] to prove what money he would lose if ... [appellant] were permitted to breach this contract....’” Id. (ellipses and brackets in original).
More recently, in Easton Theatres, Inc. v. Wells Fargo Land & Mortgage Co., Inc., 265 Pa.Super. 334, 401 A.2d 1333 (1979), the Superior Court upheld a grant of specific performance in favor of a lessee who had obtained a landlord’s agreement to build a movie theater for it on the property adjacent to the landlord’s shopping center. The court found that the lessee had no adequate remedy at law because the future profits of the theater were impossible to calculate accurately and because the landlord had failed to demonstrate that the lessee could find similar properties as a substitute. Id. at 1344-45 (citing City Stores Co. v. Ammerman, 266 F.Supp. 766, 776 (D.D.C.1967), aff'd, 394 F.2d 950 (D.C.Cir.1968)).
The Pennsylvania Supreme Court specifically endorsed Easton in Petry v. Tanglwood Lakes, Inc., 514 Pa. 51, 522 A.2d 1053 (1987), in which the court affirmed the denial of specific performance of a developer’s agreement to construct a lake near plaintiffs property. The Petry court distinguished its own case from those cases, like Easton, which involved “what essentially amounts to a joint business venture [where] future business profits are of necessity speculative and difficult to determine.” Petry, 522 A.2d at 1056 & n. 7. In such cases, the court implied, damages would not be an adequate remedy.
This court recently had occasion to discuss this very line of Pennsylvania authority in Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153 (3d Cir.1999). There, plaintiff was an acquiring company attempting to enforce specifically a merger agreement that the defendant target company had allegedly breached. The district court refused to grant a preliminary injunction comipelling specific performance of the merger agreement on the ground that, even if plaintiff could show that defendant breached the agreement, plaintiff would have an adequate legal remedy in the form of an action for damages. On appeal, plaintiff argued that it was entitled to specific performance “because of the inherent uniqueness of a company sought to be acquired....” Id. at 159. We agreed. After reviewing the Pennsylvania cases discussed above, as wéll as additional authority from other jurisdictions, our opinion held:
These cases could be interpreted as imposing upon a plaintiff" (the would-be acquirer) the burden of showing with some particularity that the business to be acquired is either inherently unique or offers a unique' opportunity to the buyer. However, the cases go into little detail chronicling the attributes of uniqueness. Moreover, no case that has come to our attention has found a busi *308 ness either not unique or not offering a unique opportunity to the buyer.... We think it clear that the agreed-upon [ ] merger constitutes a unique, non-replicable business opportunity for [plaintiff].
Id. at 163.
Although none of the above-cited cases concerned the precise situation present in the case at bar — i.e.,' a partner’s equitable demand for reinstatement of its wrongfully foreclosed partnership interest — they strongly suggest that, under' Pennsylvania law, monetary damages-'aré not an adequate substitute for BFG’s proposed equitable remedy. By asking the state court to restore its partnership interest in debtor, BFG seeks to regain partial ownership of a business venture that owns and operates a piece of unique commercial real property within the City of Philadelphia. Much like the plaintiffs in. Cochrane, Easton Theatres, and Allegheny Energy, BFG would not be in a position to calculate its damages with any sufficient degree of certainty if the state court ultimately determined that it was wrongfully deprived of its partnership interest. We therefore conclude that monetary damages are not an alternative to BFG’s proposed equitable remedy, and that BFG’s state court action against debtor, to the extent that it seeks such equitable relief, does not constitute a “claim” that was . discharged in debtor’s bankruptcy proceedings.[3]
We also reject debtor’s argument that BFG’s equitable demand for reinstatement is foreclosed by debtor’s confirmed plan of reorganization. Debtor points out that the disclosure statement accompanying the plan, consistent with the voluntary petition filed by debtor, listed Civicorp as debtor’s only general partner and made no mention of any ownership interest held by BFG or Gilbert. As the District Court noted, however, the plan itself does not purport, to resolve disputed issues regarding the ownership of debtor, but rather maintains the pre-petition status quo in general language providing that partnership interests in debtor would remain unchanged. Specifically, section 6.1 of the plan provides that the “present general partners of the Debtor shall continue to be the general partners Of the debtor and the present limited partners of the Debtor shall continue to be the limited partners of the Debtor.” App. at 325. Furthermore, the disclosure statement on which debtor places so much reliance specifically states (in-large capital letters) that “[njothing in the plan or the disclosure statement shall constitute an admission of any fact or liability by any party or be admissible in any proceeding involving debtor or any other party.” App. at 253. It also states that the proponent of the plan “is unable to warrant or represent that the information contained herein is without any inaccuracy, derived as it is from information submitted by management of the debtor.” Id. Given these statements, we cannot accept debtor’s position that the plan of reorganization explicitly addressed and extinguished BFG’s purported ownership interest in debtor.
Accordingly, we will affirm the Bankruptcy and District Courts’refusal to'enjoin BFG from’ pursuing its equitable de *309 mand to reinstate its partnership interest in debtor. ■
III.
Debtor next' argues that it is entitled to an injunction prohibiting Gilbert from asserting a claim for conversion, increasing his demand for monetary damages, or demanding punitive damages. Debtor contends that by amending his state court complaint to contain an additional theory of recovery and additional demands for relief, Gilbert has asserted new claims against debtor’s estate. These new claims,' debtor insists, were not encompassed within the proof of claim Gilbert filed with the Bankruptcy Court and, therefore, are barred by confirmation of debtor’s plan.
The Bankruptcy Court reasoned that “amendments to proofs of claim should be freely allowed where the purpose is to cure defects in a claim as originally filed, to describe a claim with greater particularity, or to plead new'theories of recovery oh facts set forth in the original claim.” In re Ben Franklin Hotel Associates, Bankr. No. 93-17089, slip op. at 11 (Bankr.E.D.Pa. October 31, 1997) (internal quotation marks and emphasis omitted). It concluded that the claim for conversion, the increased demand for monetary damages, and the demand for’ punitive damages “arise from the same set of operative facts as those pled in the Original Complaint, which ... were incorporated into [Gilbert’s] Proof of Claim No. 6.” Id. at 12.
The decision to allow amendments to a proof of claim is within the discretion of the Bankruptcy Court. See In re Hemingway Transport, Inc., 954 F.2d 1, 10 (1st Cii.1992). The District Court was convinced that the Bankruptcy Court properly concluded that “[t]he ádditional claims for damages and new theory of recovery asserted in Gilbert’s Amended Complaint are based on exactly the same transactions alleged in the original complaint.” In re Ben Franklin Hotel Associates, Civ. Action No. 97-7449, 1998 WL 94808, at *3 (E.D.Pa. March 3, 1998). Having examined the original and amended complaints, we agree that the Bankruptcy Court did not abuse its discretion in this instance. We note, however, that the allowability of any, monetary judgment that Gilbert may obtain in the state court proceedings is a matter that the Bankruptcy Court reserved for future consideration, and we have no occasion to consider that issue here.[4]
Finally, we affirm the District Court’s decision that the Bankruptcy Court did not err in declining to hold appellees in contempt and subject to sanctions based on BFG’s assertion of claims for monetary damages that violated the discharge injunction. The Bankruptcy Court concluded that appellees’ violation of the discharge injunction was not contemptuous because, inter alia, considering the unusual facts of this case, there was at least a colorable argument that BFG’s claims for monetary damages had been preserved by Gilbert’s proof of claim. We agree with the District Court that that decision was not an abuse of discretion.
IV.
For the foregoing reasons, the March 4, 1998 judgment of the District Court,will be affirmed. Each party to bear its own costs.

. The parties do not contest that the foreclosure of BFG's partnership interest in Ben Franklin was prompted by BFG’s failure to advance $2,375,000 to debtor pursuant to the "cash call” that was issued by the California partners. The additional funding was purportedly needed in connection with a restructuring of certain secured financing debt that was being negotiated by the California partners. Gilbert alleges, however, that the $2,375,000 cash call was not actually needed as part of the debt restructuring, but instead was a pretense designed by the California partners to gain leverage in a dispute between the general partners concerning alleged cost overruns on the renovations at the hotel property.

. Civieorp was formed by the California partners of debtor.

. In. so concluding, we have considered Ben Franklin’s "policy” argument that by affirming the District Court, we will encourage a purported owner of a disputed partnership interest to await the results of bankruptcy proceedings before deciding whether to assert an ownership interest. Only if the partnership turns out to be solvent, debtor contends, will the erstwhile partner step forward and declare its share of the partnership. We think this concern is misplaced, as it fails to account for the nature of our adversary system. Under Ben Franklin’s scenario, if there is little or no likelihood of the debtor partnership returning to solvency, the remaining partners who will be liable for any deficiency would likely join as a party to the bankruptcy proceeding the partner who has wrongfully disavowed an ownership interest. Thus, assuming that all of the parties act in their self-interest, debtor's fear .that partners will routinely hide their ownership disputes until the ■results of a bankruptcy are known is unfounded.

. We likewise take no view on the merits of BFG and Gilbert's causes of action against debtor. Those are matters to be resolved in the state court proceedings.