FILED

FEB 8 2022

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re:<br>JAMES W. KEENAN,<br><br>         Debtor. | BAP No. SC-21-1021-LSF<br><br>Bk. No. 96-00871-MM11 |
| JAMES W. KEENAN,<br><br>         Appellant,<br>v.<br>THOMAS L. CURTIN,<br><br>         Appellee. | **MEMORANDUM*** |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Margaret M. Mann, Bankruptcy Judge, Presiding

Before: LAFFERTY, SPRAKER, and FARIS, Bankruptcy Judges.

**INTRODUCTION**

In 1984, James W. Keenan obtained an interest in a commercial

property in Oceanside, California (the "Property"). Paul Rule and

Dr. Thomas Curtin also held interests in the Property. The three owners

formed a partnership to own and manage the Property, but they never

executed a formal partnership agreement, nor did they transfer title to the

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

1

Property into the partnership. In 1995, the partners orally agreed to a reallocation of Keenan and Curtin's partnership interests, which resulted in a reduction in Keenan's interest and a proportionate increase in Curtin's interest. Record title, however, was not changed to reflect this agreement.

During Keenan's chapter 11[1] case, he consistently treated the Property as being owned by the partnership in the adjusted amounts, including stating so in several documents executed under oath. This changed after the effective date of the confirmed chapter 11 plan, when he filed an amended Schedule B asserting that he owned his larger original interest in the partnership. He later took the same position when the liquidating trustee filed a motion to approve an interim distribution in the adjusted, reduced percentage. The bankruptcy court rejected Keenan's argument on grounds of judicial estoppel.

After the bankruptcy case was closed, Curtin filed an action in state court seeking reformation of the deed to the Property to reflect that it was held in the adjusted amounts, along with other equitable remedies resolving the dispute over the ownership interests in the partnership. The state court entered judgment in favor of Curtin in 2017. After Keenan's appeal of the judgment was dismissed for lack of prosecution, he returned to the bankruptcy court, seeking an order to enforce the discharge provision of the confirmed chapter 11 plan. The bankruptcy court denied

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal

the motion on the grounds that the causes of action in the state court litigation were not discharged because they involved a property interest rather than a claim, the equitable claims could not be monetized, and any "claim" arose after the effective date of the plan. It also found that, under the law of the case, Keenan was judicially estopped from asserting that the Property was not owned by the partnership in the adjusted amount.

We affirm, primarily because the state court litigation involved a property interest rather than a claim that could be discharged in bankruptcy.

## FACTS

Keenan filed a chapter 11 petition in January 1996. A few months later, the bankruptcy court appointed a chapter 11 trustee. As of the petition date, record title to the Property was held by Keenan and his wife as to an undivided 85.007% interest, Paul A. Rule as to a 6% interest, and appellee Thomas L. Curtin as to an 8.993% interest, all as tenants in common. Despite record title, the three owners treated the Property as being held and operated by a partnership known as the Loma Alta Partnership, although they never executed a formal written partnership agreement. In 1995, Curtin and Keenan orally agreed to a modified ownership allocation, with Curtin's ownership share being increased to 37.328% and Keenan's ownership share being reduced to 55%. Although record title did not change, the adjustment was reflected in the written

Rules of Bankruptcy Procedure.

accounts for the partnership, and the parties received income (distributed by Keenan) in accordance with those reallocated percentages.

Keenan, under oath, repeatedly described the Property as owned by the partnership in the adjusted percentage amounts, i.e., in his bankruptcy schedules and statement of financial affairs, his tax returns, his Rule 2004 examination, other state court litigation, and declarations filed in the bankruptcy case.

During the chapter 11 case, the trustee sued the partnership, Curtin, and Rule, asserting avoiding power and turnover claims and seeking to quiet title in property owned by putative partnerships of which Keenan was a partner (the "Partnership Adversary Proceeding"). In his declarations filed in opposition to the trustee's emergency motion for immediate surrender of estate property, Keenan testified under penalty of perjury that he had a 55% interest in the partnership and that Curtin had a 37.328% interest. The Partnership Adversary Proceeding was eventually dismissed without prejudice in January 2011.

On May 13, 1998, the bankruptcy court confirmed the chapter 11 plan jointly proposed by the chapter 11 trustee and the Official Creditor's Committee. Keenan received a discharge on the plan's effective date of June 27, 1998.

After plan confirmation, Keenan changed his position regarding his ownership interest. In April 1999, he filed an amended Schedule B in which he increased his partnership share to 83.335%.

In October 2001, after creditors had been paid in full under the confirmed plan, the trustee entered into an interim distribution agreement ("IDA") with Curtin and Rule to distribute the partnership profits in accordance with the adjusted interests. When the trustee sought court approval of the IDA, Keenan opposed it, taking the position that the partnership agreement had never been signed and the percentage adjustments had not been consummated. After a five-day evidentiary hearing, the bankruptcy court overruled Keenan's opposition, finding, for purposes of resolving the motion, that Rule, Curtin, and Keenan were partners holding the adjusted interests. The court found that Keenan's statements under oath in his bankruptcy case, in which he admitted the existence of the partnership and the adjusted interests, were judicial admissions; thus, he was judicially estopped from contending otherwise.

In 2005, Curtin filed an adversary proceeding against Keenan seeking to compel a buyout of his partnership interest. Keenan moved to dismiss the complaint, contending that the action did not involve property of the estate and claiming that the court lacked subject matter jurisdiction.[2]

The bankruptcy case was closed in August 2010, and a final decree was entered in March 2011.

Shortly after the case was closed, Curtin filed a complaint against Keenan and his wife in San Diego Superior Court (the "State Court

---

[2] That adversary proceeding was dismissed without prejudice pursuant to a court-approved tolling agreement between Curtin and the trustee.

Action"), asserting claims for: (1) imposition of constructive trust; (2) reformation of deed; (3) quiet title; (4) anticipatory breach of contract; (5) injunctive relief; and (6) partnership dissolution, accounting, and liquidation of assets. Curtin initially sought damages relating to loss of the partnership interest, lost profits, and interest, but the anticipatory breach claim was dismissed before trial, leaving only the equitable claims. Keenan did not assert the discharge as a defense to the claims.

After a bench trial, the superior court found in favor of Curtin on the deed reformation, constructive trust, and quiet title causes of action. The court determined that the Property was owned by a partnership according to the adjusted interests. The court also found Keenan was not a credible witness based in part on the statements he had made under oath in the bankruptcy case that he was a partner in the partnership and that the partners held their interests in the adjusted amounts. The state court entered a judgment (the "Judgment") that, among other things, imposed a constructive trust on the Property and ordered the reformation of the deed to reflect the adjusted percentages. The judgment also permanently enjoined the Keenans from taking any action to adversely affect the interests of the other partners. No money damages were awarded.

The Keenans appealed the Judgment, but that appeal was dismissed for failure to prosecute. After the Keenans refused to execute the reformed grant deed, the state court appointed an elisor, who executed it, and the deed was recorded.

Keenan then filed a motion to enforce the plan discharge against Curtin, arguing that the Judgment was based on a pre-petition breach of contract and therefore the underlying claims had been discharged in the chapter 11 case. The motion stated that he sought an order enforcing the discharge and injunction provisions of Article XV of the confirmed chapter 11 plan and the confirmation order, an order enforcing the discharge under § 727(b) [sic] and § 524(a)(1), and an order voiding the Judgment. Curtin opposed the motion. After hearing argument, the bankruptcy court took the matter under advisement and issued a memorandum decision and order denying the motion. The court found that the discharge did not apply to Curtin's rights regarding the partnership because: (1) it was a property interest rather than a claim; and (2) Keenan's dishonor of the adjusted partnership interest arose post-effective date. The court also found as an alternate ground for denial that the bankruptcy judge's findings in the IDA matter regarding judicial estoppel were preclusive as law of the case.

Keenan timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(O) and its retention of jurisdiction in the order confirming the chapter 11 plan. We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court err in denying the motion to enforce the discharge injunction?

**STANDARD OF REVIEW**

"The scope of the bankruptcy discharge injunction is a mixed question of law and fact to be reviewed either de novo or for clear error, depending upon whether questions of law or questions of fact predominate." *Mellem v. Mellem (In re Mellem)*, 625 B.R. 172, 177 (9th Cir. BAP 2021), *aff'd*, No. 21-60020, 2021 WL 5542226 (9th Cir. Nov. 26, 2021) (citing *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967-68 (2018). Here, legal questions predominate; therefore, our review is de novo.

The bankruptcy court's interpretation of the terms of a confirmed chapter 11 plan is reviewed de novo. *Pioneer Liquidating Corp. v. U.S. Tr. (In re Consol. Pioneer Mortg. Entities)*, 248 B.R. 368, 375 (9th Cir. BAP 2000). Under de novo review, we look at the matter anew, as if it had not been heard before, and as if no decision had been rendered previously, giving no deference to the bankruptcy court's determinations. *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006).

**DISCUSSION**

**A.    The Scope of the Discharge**

The scope of the discharge in this case is determined by reference to both the Bankruptcy Code and the terms of the confirmed plan and

8

confirmation order. The relevant code sections are §§ 1141 and 524. Section 1141(d)(1)(A) states: "Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation . . . ." Section 524(a)(2) implements the statutory discharge by providing that the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ."

Paragraph 9 of the confirmation order provides in relevant part: "Except as otherwise provided in the Plan or this Confirmation Order, Confirmation will discharge the Estate from all Claims or other debts that arose before the date of Confirmation, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code . . . ."

And paragraph 10 of the confirmation order provides:

> As of the Effective Date, except as provided in the Plan or this Confirmation Order, all entities will be precluded from asserting against the Estate, its successors, or its property, any other or further Claims, debts, rights, causes of action, or liabilities based on any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or this Confirmation Order, this Confirmation Order will be a judicial determination of discharge of all such Claims and other debts and liabilities against the Estate pursuant to sections 524 and 1141 of the

Bankruptcy Code, and such discharge will void any judgment obtained against the Estate at any time, to the extent that such judgment relates to a discharged Claim.[3]

As defined in the plan, the term "Claim" has the same meaning as provided under § 101(5) of the Bankruptcy Code, which defines the term as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Under this definition, an equitable remedy is a "claim" that can be discharged only if a monetary payment is a viable alternative. *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 305 (3d Cir. 1999). On the other hand, "[i]f the only remedy allowed by law is non-monetary, then the equitable remedy is not considered a claim for purposes of bankruptcy and it survives the discharge of the debtor." *TKO Prop., LLC v. Young (In re Young)*, 214 B.R. 905, 912 (Bankr. D. Idaho 1997) (citing *In re Aslan*, 65 B.R. 826, 830-31 (Bankr. C.D. Cal.1986), *aff'd*, 909 F.2d 367 (9th Cir. 1990)). *See also In re Wright Flight Aviation, Inc. v. Krasnoff (In re Mach I Aviation, Inc.)*,

---

[3] This language is very similar to that used in the plan itself, except that the plan included language precluding the assertion of claims against the debtor rather than the estate.

BAP Nos. CC–10–1520–MkBPa, CC–10–1521–MkBPa, 2011 WL 5838520, at

*7 (9th Cir. BAP Sept. 15, 2011) (quoting *In re Young*, 214 B.R. at 912).

**B.    The bankruptcy court did not err in finding that the state court litigation did not violate the discharge provisions of the Bankruptcy Code or the Confirmation Order.**

   **1.    The bankruptcy court did not err in finding that the Judgment did not arise from a "claim" as defined in the Bankruptcy Code.**

The Judgment does not constitute a "claim" under the Code for two reasons. First, a partnership interest is a property interest rather than a claim. Second, even if the Judgment could be construed as arising from a breach of a pre-petition contract, it does not fit into the Code's definition of a "claim."

A partnership interest does not constitute a claim against the partnership. *Estes & Hoyt v. Crake (In re Riverside-Linden Inv. Co.)*, 925 F.2d 320, 323 (9th Cir. 1991) (per curiam). This is because partners are not creditors of the partnership with respect to their partnership interests, i.e., their ownership interests are not a debt of the partnership. *Id.* (citing *Estes & Hoyt v. Crake (In re Riverside-Linden Inv. Co.)*, 99 B.R. 439, 444 (9th Cir. BAP 1989)). "Partners own the partnership subject to the profits or losses. Creditors, however, hold claims regardless of the performance of the partnership business. Thus, an ownership interest is not a claim against the partnership." *Id.* (quoting *In re Riverside-Linden Inv. Co.*, 99 B.R. at 444). *See also Baker v. Al-Ruwaished (In re Al-Ruwaished)*, 266 B.R. 194, 196 (Bankr.

11

N.D. Cal. 2001) ("Where there is a claim that a trust arises out of intended ownership rights in property, the person claiming the ownership rights does not do so as a creditor and is not barred by the discharge.").

Keenan correctly points out that *Riverside-Linden* involved a debtor partnership, while here the debtor is an individual partner, and the dispute is between partners, not between a partner and the partnership. But he cites no legal or factual basis for recharacterizing a partnership interest as a "claim" solely because the dispute is between partners.

In any event, the causes of action in the State Court Action do not fall into the category of "claims" as defined in § 101(5) because there is no alternative monetary remedy. Only equitable relief was sought by Curtin in the State Court Action—constructive trust, deed reformation, quiet title, injunctive relief, and dissolution of the partnership. The fact that Curtin initially sought money damages for anticipatory breach is inconsequential. *See In re Ben Franklin Hotel Assocs.*, 186 F.3d at 306 ("Nor do we agree with debtor's related suggestion that BFG, by originally seeking damages for the loss of its partnership interest in its state court complaint, has somehow conceded that monetary relief is a viable alternative remedy.").

And the Judgment granted only equitable relief: declaratory relief as to the ownership interests in the Property and the partnership, deed reformation, the imposition of a constructive trust, an injunction prohibiting the Keenans from adversely impairing Curtin's and Rule's interests in the Property and the partnership, and the appointment of

Curtin and the estate of Paul Rule as co-managing partners of the partnership.

The bankruptcy court correctly found that Curtin had no viable monetary remedy. *See In re Mach I Aviation*, 2011 WL 5838520, at *8 (holding that appellant's equitable claims for declaratory relief, cancellation of documents, and for quiet title to its property have no precise or viable damage alternatives, citing *In re Ben Franklin Hotel Assocs.*, 186 F.3d at 306). *See also Irizarry v. Schmidt (In re Irizarry)*, 171 B.R. 874, 878 (9th Cir. BAP 1994) (equitable remedies of cancellation of the grant deed, recovery of real property, and cancellation of liens are not claims or debts subject to discharge); *Sheerin v. Davis (In re Davis)*, 3 F.3d 113, 116-17 (5th Cir. 1993) (equitable remedies of resulting trust, partition in kind, and deed reformation are not dischargeable claims).

Keenan argues that money damages were available, even if they were not sought or awarded. But he fails to explain how the equitable remedies awarded in the Judgment could be monetized. Although he cites cases in which courts found that a particular equitable claim could be monetized—*Route 21 Associates of Belleville, Inc. v. MHC, Inc.*, 486 B.R. 75 (S.D.N.Y. 2012), *In re Young*, 214 B.R. at 912, and *Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.)*, 335 B.R. 253 (1st Cir. BAP 2005), *aff'd*, 482 F.3d 15 (1st Cir. 2007)—he provides no analysis of the facts of this case from which one could draw the conclusion that monetary damages would have been available. California courts recognize that the legal remedy of damages is

generally inadequate in real property disputes. *Wilkison v. Wiederkehr*, 101 Cal. App. 4th 822, 830 (2002) (citing *Morrison v. Land*, 169 Cal. 580, 586-87 (1915)).

**2.    The bankruptcy court did not err in concluding that the broad language of the confirmation order did not result in the discharge of Curtin's claims.**

As noted, the confirmation order discharges the estate from "claims, debts, rights, causes of action, or liabilities based on any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date." Keenan argues that this language is broad enough to encompass Curtin's equitable claims. But he forgets that as of the petition date, he held a 55% interest in the partnership, as reflected in his schedules filed under penalty of perjury. That interest became property of the estate, but the other partners' interests did not. Accordingly, the discharge under the confirmation order could not have affected Curtin's interest.

Keenan also asserts that Curtin's claims were addressed in the confirmed plan, but the plan did not overtly address or resolve the partners' interests in the partnership. It provided for alternative treatment depending on the outcome of the Partnership Adversary Proceeding. Specifically, if the proceeds from the sale or operation of a partnership were determined not to be property of the estate, the estate would receive its proportionate interest, and the partnership and remaining partners would not participate in the remaining estate assets. On the other hand, if

14

proceeds were determined to be estate property, the partners could file proofs of claim and participate in the distribution of assets of the estate.

Keenan argues that this provision means that the only way Curtin could have a determination that the Property was owned by a partnership or that he had an increased interest was if that "claim" was pursued to a final judgment in the bankruptcy case. But nothing in this provision purports to require resolution of any dispute **between the partners** as to their respective ownership interests, nor could it have, as there was no dispute at that time; the litigation was between the trustee and the partners.

In a related argument, Keenan contends that Curtin's interests could only have been resolved by the filing of an adversary proceeding in the bankruptcy court. But Curtin filed such an adversary proceeding in 2005, in which Keenan took the position that the action did not involve property of the estate so that the court lacked subject matter jurisdiction.

Keenan's argument, if accepted, would lead to an absurd and unjust result. If Keenan were right, he could have asserted that he owned 100% of the partnership, and the discharge would have barred Curtin from defending his interest in the partnership. This shows that Keenan's argument rests on a fundamental misunderstanding: the discharge and plan injunction protect the debtor from claims, but they do not disable other parties from defending their property interests against the debtor's assertions of ownership.

15

As noted, the bankruptcy court alternatively denied the motion based on the doctrine of law of the case. Because we find no error in the bankruptcy court's ruling on the merits, we need not address this alternative ground, although we see no reason why the bankruptcy court could not have independently treated Keenan's schedules and other sworn documents as judicial admissions.

## CONCLUSION

For all these reasons, the bankruptcy court did not err in denying Keenan's motion to enforce the discharge. Accordingly, we AFFIRM.